OPINION OF THE COURT
David H. Pfeffer, J.
This case came on for trial on March 20, 1994 with the defendant charged with driving at a speed of 46 miles per hour on Glen Cove Avenue within the Village of Roslyn Harbor in violation of the posted speed limit of 30 miles per hour. The People relied for their proof of speed on the testi *218 many of Sixth Precinct Police Officer Stanley Kerszko. Officer Kerszko’s testimony was based upon an independent estimate of the speed of the defendant’s vehicle together with his testimony that he used a laser gun device to obtain a reading of the speed of that vehicle.
The defendant testified that his speed was at exactly the speed limit, based on his consistent perusal of his speedometer. The court is not willing to base a conviction for speeding on the basis of a dispute between an officer’s visual speed estimate and a defendant’s assertion that he read his speedometer. Accordingly, the issue squarely before the court is whether or not laser speed readings are inherently reliable and if reliable, were properly taken by Officer Kerszko in this case.
In a previous decision by this court in which laser evidence was the sole basis for determination of speed, the court ruled that there had not yet been proof that the principles underlying laser speed determinations had seen general scientific acceptance and that there had been no ruling by this court or by an appellate court in this State accepting laser speed readings as proof sufficient to support a conviction for driving at a rate of speed exceeding the existing speed limit. (See, People v Foran, docket No. 391/94.) There had been such a ruling in the case of radar evidence of speeding. (See, People v Magri, 3 NY2d 562 [1958].)
Just recently the Court of Appeals reiterated the standard applicable in this State to the acceptance of scientific test evidence offered to support a criminal prosecution. In People v Wesley (83 NY2d 417, 422 [1994]), the Court held that in determining whether a proffered scientific test is properly admissible: "attention must focus on the acceptance of such evidence as reliable by the relevant scientific community. The long-recognized rule * * * is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance’ in its specified field.”
As an example the Court in Wesley (supra) pointed to the holding in Frye v United States (293 F 1013), that systolic blood pressure (the basis for the so-called "lie detector”) was not proper evidence of a person’s truthfulness.
Presumably as a result of this court’s Foran decision (supra), the People presented testimony by two witnesses in addition to Police Officer Kerszko. They were Dr. Daniel Gezari, an *219 astrophysicist employed at the Goddard Space Flight Center, and Police Officer Jesus Valdez of the Nassau County Police Department, Highway Patrol Division. Officer Valdez is the laser instructor for the Nassau County Police Department.
Dr. Gezari holds A.B. and M.S. degrees in physics from Cornell and NYU, respectively, and a Ph D in astronomy from Stony Brook. His areas of specialization have included observational infrared astronomy, electro-optical instrumentation and array detectors. He is the author of over 100 scientific publications. Based on Dr. Gezari’s background, the court, on motion of the People, accepted Dr. Gezari as an expert.
Dr. Gezari explained the principles utilized in the operation and use of the Laser Technology Inc. LTI 20-20 hand-held instrument for determining speed of a moving vehicle. His testimony made clear that the device makes use of principles that have been well accepted in the scientific community for many years. In essence the device relies on the principle that the speed of light is known and constant. It further relies on the accepted understanding that a laser beam emitted from a laser generator is very narrow in width and will not spread significantly after emission, and is emitted in a narrow frequency band.
In addition to a laser emitter, the LTI 20-20 device also contains a photodiode, a clock and a computational device. In operation, when a short laser beam burst is emitted toward an object having a reflective surface, the time at which the reflected beam is received back at the photodiode is determined. Based upon the time between laser beam emission and return, and the known speed of light, the distance between the object and the laser device is determined by simple arithmetic calculation. If two or more sequential beams are emitted toward a specific vehicle and the return times are measured, the difference in the distances measured for each emission can be used to determine the difference between the locations of the vehicle at two points. By knowing the difference in time between each of the emission returns, and then dividing the difference in distance by the time elapsed between the two returns, the velocity of the vehicle between the two points is determined.
According to Dr. Gezari’s testimony, these principles of operation are widely used in laser rangefinders, in geodesic survey work and in many other applications. The LTI 20-20 device itself has been used on at least six space shuttle flights *220 within the last two years to measures distances between the shuttle and other objects. A data base survey has revealed the existence of over 1,500 publications dealing with the use of lasers to determine distance or measure velocity. The same principle of operation is also used by airport "radar” which uses pulsed radio waves rather than laser pulses to locate the positions of aircraft flying in the vicinity. The only difference is in the wave length of radio waves as compared to that of laser light.
Considerable care appears to have been taken to insure the accuracy of readings taken with the LTI 20-20 device. As explained by Dr. Gezari, the laser device, when activated, emits 60 pulses within about one third of a second. The first several pulses are used to establish a range to the target. The next 40 pulses are then transmitted and the reflections received back by the diode-clock combination. In order for a reading of speed to be displayed on the unit’s digital readout, 30 pulses must return to the diode and result in speed determinations within 1 mile per hour. The emissions of the pulses are computer generated. The computer also does the calculations and insures that the calculated velocity values form a least squares fit within the allowable tolerance, i.e., + / — 1 mile per hour at a speed of 60 miles per hour.
In order to determine whether the laser device is operating properly, the user is required to conduct certain tests periodically during each day of use. These tests include: (1) the operator turns on the device and insures that the digital readout display is working properly; (2) the operator performs an alignment test for the scope annexed to the device to insure that the bull’s-eye in the scope is properly centered on an object, both vertically and horizontally, when the device’s "on-target” tone is heard; (3) the operator stands a premeasured 100 feet away from an object and then measures the distance with the laser device. This measures both the laser operation, the clock action and the computer since all must be synchronized for the correct response; (4) the operator applies the laser gun to two preset distances, 100 and 125 feet away. This then displays a velocity reading as if the device was measuring two locations of a vehicle. This shows that the calculation means are properly functioning.
Officer Valdez explained the training that is given to Nassau County officers before they are certified in the use of the laser device. Before taking the laser course, an officer must first be certified in the use of radar devices and is then given *221 hands-on training and eight hours of instruction in the use of laser devices, including the use, handling and calibration testing of the LTI 20-20 device. Only after satisfactorily passing the course does an officer receive a Nassau County certification card.
Based upon the testimony presented, the court is satisfied that the use of the LTI 20-20 device is based upon well-accepted scientific principles and can be accepted in this court as an accurate method of measuring the speed of a moving vehicle, within the requirements the Court of Appeals has announced in People v Wesley and People v Magri (supra).
In this case, Officer Kerszko testified that he was certified by the Nassau County Police Department in the use of the laser device, that he was trained in the making of independent speed estimates and that within one-half hour prior to this incident and some two hours after the incident here at issue, he had performed the required calibration tests and found the 20-20 device to be in proper working order. A copy of the manufacturer’s certification of accuracy of the device was also provided to the court.
The defendant’s vehicle, a school van, was first observed by Officer Kerszko about 1,000 feet away at which time he made a visual estimate that the van was traveling at 45 miles per hour. He activated the laser device when the van was about 980 feet away and obtained a speed reading of 46 miles per hour. The posted speed limit was 30 miles per hour. The defendant’s van was then stopped and the defendant was given a traffic ticket for speeding.
On this record, the court is satisfied that the People have proved a case of speeding by the required beyond a reasonable doubt standard. The court finds the defendant guilty of the charge of speeding 46 miles per hour in a 30 mile-per-hour zone.