740 A.2d 690 (1999)
326 N.J. Super. 110
STATE of New Jersey, Plaintiff-Respondent,
v.
Emad A. ABESKARON, Lance D. Bates, Martin A. Lebson, and Jay Palmer, Defendants-Appellants.
In the Matter of The Admissibility Hearing of the LTI Marksman 20-20 Laser Speed Detection System.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1999.
Decided November 24, 1999.
*691 Sohail Mohammed, Clifton, for defendants-appellants.
John J. Farmer, Jr., Attorney General, for plaintiff-respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, CONLEY and COBURN.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The procedural posture of this appeal is somewhat unusual because it is based on the grant of leave to appeal by another panel of this court in part from adjudications in the Municipal Court of Parsippany. Defendants appeal both from a prior proceeding entitled In the Matter of the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection Sys., 314 N.J.Super. 233, 714 A.2d 381 (Law Div. 1998) (Laser II) and from the entry of conditional guilty pleas to speeding (N.J.S.A. 39:4-98) which preserved their right to appeal from the Laser II decision. Laser II was essentially a continuation of proceedings arising from earlier speeding cases. It approved the use of the LTI Marksman 20-20 Laser Speed Detection System (LTI Marksman) in the affected counties to aid the enforcement of motor vehicle speeding laws. The order granting leave to appeal[1] granted the request to consolidate the four appeals from the speeding convictions and to appeal the judgment approving the use of the laser detector.
*692 In their point headings defendants raise the following issues:
I. [The Law Division Judge's] decision permitting the use of evidence obtained through use of LTI 20-20 Marksman was jurisdictionally defective and as such it shall not be binding on any court. (Partially raised below).
II. Readings produced by LTI Marksman 20-20 should not be admitted in the prosecution of any motor vehicle cases since the LTI Marksman 20-20 has not been proven to be scientifically reliable and accurate.
The background of the challenge to the use of the LTI Marksman is contained in two reported opinions entitled In the Matter of the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection Sys., 314 N.J.Super. 211, 714 A.2d 370 (Law Div.1996) (Laser I) and id. at 233, 714 A.2d 381 (Laser II). In Laser I Judge Stanton determined, after an evidentiary hearing in the spring of 1996, that despite the presentation of expert testimony the LTI Marksman detector had not been shown to be reliable or accurate enough to be used in the prosecution of speeding violations in the cases involving the individual named defendants. Judge Stanton initially prohibited the use of the lasers essentially because the manufacturer refused to disclose details of how the equipment's error-trapping function operated since it wanted to protect proprietary information. In addition, there was inadequate performance testing of the Marksman to ensure its accuracy and reliability. Laser I, supra (314 N.J.Super. at 227-228, 714 A.2d 370).
No appeal was taken from the decision in Laser I. Subsequently, after additional testing of the detector, the State applied to Judge Stanton to reopen the Laser I evidentiary proceedings. When the results of the additional testing were submitted to the court in the fall of 1997 with a request for reconsideration, the speeding complaints against the four named defendants in this appeal were still pending. Defendants had not participated in the Laser I proceedings; however, one of their attorneys had participated on behalf of another defendant. The cases of the Laser I defendants were resolved before the second hearing. As a result, Judge Stanton invited several attorneys for those defendants in the prior speeding violation cases who participated in Laser I, including the instant defendants' current attorney, to participate as amici curiae in the subsequent hearings in Laser II.
A new evidentiary hearing was conducted in October 1997, with the participation of attorneys for the Laser I defendants without any objection on jurisdictional grounds. Thereafter, in his March 20, 1998 opinion in Laser II (314 N.J.Super. 233, 714 A.2d 381) Judge Stanton concluded that the State had established the reliability and accuracy of the laser detector and that speed readings obtained by it would henceforth be admissible, subject to certain conditions and restrictions, in the prosecution of motor vehicle speeding cases in municipal courts in Morris and Sussex Counties, including the Municipal Court of Parsippany where the speeding charges of defendants were pending. The order allowing use of the laser detector listed certain restrictions and conditions referred to in the judge's decision in Laser II.
The underlying summonses of the defendants herein were resolved by conditional pleas of guilty, see R. 7:6-2(c), in the municipal court on May 18, 1998, to reduced charges of speeding and were memorialized by orders of July 17, 1998, that reserved their right to appeal the March 20, 1998 Laser II decision approving the laser detection device. The payment of fines and costs were stayed pending the outcome of the appeal.
Defendants appeal to this court, on leave granted, from the orders entering conditional pleas, and they seek to include *693 the judgment in Laser II.[2] The attorney for appellants, who also participated as one of the amici regarding Laser II at Judge Stanton's request, and had represented other defendants in Laser I, asserts for the first time that the Law Division lacked jurisdiction to hear the case because there was no pending controversy. In addition, appellants argue that the laser detection device was not proven to be scientifically reliable and accurate. The State argues that we should nonetheless consider the matter because the issue of the admissibility of speed readings from the laser detector is a matter of great public importance and likely to recur.
We are of the view that defendants' entry of the conditional pleas and their motion which sought leave to appeal and relief related to Judge Stanton's ruling resolved any jurisdictional deficiency. We deem the actions of the defendants in this appeal by their conditional pleas and the requests in their motions for leave to appeal as in effect a request to be considered as having participated in the proceedings in Laser II. Their attorney had participated not only in Laser II, but also in Laser I. Moreover, although there is no notice of appeal because leave to appeal was granted, see R. 2:5-1(g), defendants' Case Information Statement likewise treats the March 20, 1998 decision of Judge Stanton permitting the use of readings produced by the LTI Marksman 20-20 as part of the judgment now being challenged.[3] In addition, they obtained and submitted extensive transcripts of the lengthy videotaped hearings before Judge Stanton in October 1997 as part of the record of this appeal. Thus, we bypass procedural irregularities and consider these appeals as if defendants participated in Laser II or had directly challenged the admissibility of the Marksman 20-20 Laser Speed Detector System in the municipal court and in the Law Division on a trial de novo on the record and as if it were conceded that the admissibility ruling would be applied and binding in each instance. See State v. Finkle, 128 N.J.Super. 199, 319 A.2d 733 (App.Div.), aff'd, 66 N.J. 139, 329 A.2d 65 (1974), cert. denied, 423 U.S. 836, 96 S.Ct. 61, 46 L.Ed.2d 54 (1975) (judicial notice taken of scientific reliability of VASCAR, as found in earlier case, on appeal from speeding conviction).[4]
*694 We are aware that courts should not render advisory opinions or exercise jurisdiction in the abstract. See In re J.I.S. Indus. Serv. Co. Landfill, 110 N.J. 101, 104, 539 A.2d 1197 (1988). See also In re Requests to Judges of Chancery for Advisory Opinions, 101 N.J.Eq. 9, 137 A. 151 (Ch.1927). Due to the procedural issues regarding what is the record in this appeal we might thus decline to entertain the issue of the use of LTI Marksman results. Nonetheless, it is clear that even when a case becomes moot, where the issue is of significant public importance and likely to recur our courts have considered such matters. See State v. Gartland, 149 N.J. 456, 464, 694 A.2d 564 (1997); In re J.I.S. Indus. Serv. Co. Landfill, supra (110 N.J. at 104, 539 A.2d 1197); and In re Farrell, 108 N.J. 335, 529 A.2d 404 (1987) (deciding whether person had the right to die even though the person involved in the litigation had died before the appeal was decided). An analogous situation arose in State v. Wojtkowiak, 174 N.J.Super. 460, 462, 416 A.2d 975 (App.Div.1980) (although speeding conviction based on use of K-55 radar was vacated, public interest warranted evaluation of K-55 radar use by law enforcement). Under these circumstances, including the continued use of the LTI Marksman and the public importance of the issue, we consider it appropriate to entertain the appeal with respect to the decision in Laser II. See State v. Finkle, supra (128 N.J.Super. 199, 319 A.2d 733).
As to the adequacy of the proofs to support the determination, our thorough review of the record in light of the arguments presented satisfies us that Judge Stanton appropriately found in Laser II that, subject to the listed restrictions, the subject laser detector was an appropriate tool in measuring speed.
We affirm the four speeding convictions which were the subject of the conditional pleas with reservations of the right to challenge the use of the LTI Marksman 20-20. We approve the findings and conclusions of Judge Stanton in his published opinion which appears at 314 N.J.Super. 233, 714 A.2d 381 (Law Div.1998), and the application of that decision to plaintiffs' speeding cases and their appeals.
COBURN, J.A.D., dissenting.
With the consent of the State, defendants, whose arrests were based on the LTI Marksman 20-20 Laser Speed System ("Marksman"), entered conditional guilty pleas under R. 7:6-2(c) to speeding (N.J.S.A. 39:4-98) in the Municipal Court of Parsippany. With the support of the State, defendants moved in this court for leave to appeal their convictions, bypassing the Law Division, and for leave to appeal from a prior judgment of the Law Division, in a case in which they were not involved, validating use of the Marksman in speeding cases. In re the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection Sys., 314 N.J.Super. 233, 714 A.2d 381 (Law Div.1998) (Laser II). Leave to appeal was granted by another panel.
Defendants offer two arguments on appeal. First, they argue that the Law Division should not have exercised jurisdiction in Laser II because there was no pending controversy. Second, they argue that Laser II was wrong on the merits.
*695 The procedural posture of Laser II was extraordinary. In an earlier decision involving other defendants, the same Law Division judge had rejected the Marksman because the proofs did not establish its accuracy. In re the Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection Sys., 314 N.J.Super. 211, 227, 714 A.2d 370 (Law Div.1996) (Laser I). The State performed additional testing and applied to the judge to reopen the hearing for additional evidence. Laser II, supra, 314 N.J.Super. at 236, 714 A.2d 381. However, before the hearing the individual defendants involved in Laser I resolved their cases at the municipal court level. Ibid. Nonetheless, the judge invited those defendants' attorneys to appear in opposition to the State as "Amicus Curiae." Id. at 234, 236-37, 714 A.2d 381. Three of the defense attorneys participated in the hearing, one of whom happens to be the defense attorney in the instant case. They presented expert testimony opposing the State's experts, and the fees of those experts were paid for by the State pursuant to an order of the trial judge issued three months before the hearing. Id. at 237, 714 A.2d 381. Defense counsel raised no objection to the nature of the proceedings. They participated vigorously in a hearing that lasted four days and consumed more than 1,200 pages of transcript.
The order resolving Laser II was entered on March 20, 1998. The conditional pleas were entered in this case on May 19, 1998, and sentences were imposed and stayed on July 17, 1998. The motion for leave to appeal was filed on August 3, 1998, over four months after the decision and order in Laser II.
Neither defendants' brief in support of the motion for leave to appeal, nor the State's supporting letter, made any mention of the extraordinary nature of the proceedings in Laser II. Defendants simply argued that Laser II was wrong on the merits and urged that an appellate determination of the validity of the Marksman would serve the public interest.
The doctrine of judicial estoppel "bar[s] a party to a legal proceeding from arguing a position inconsistent with one previously asserted." N.M. v. J.G., 255 N.J.Super. 423, 429, 605 A.2d 709 (App. Div.1992). Although it is most often applied when a party takes inconsistent positions in different litigation, it is equally applicable when a party "asserts inconsistent legal positions in different proceedings in the same litigation." Cummings v. Bahr, 295 N.J.Super. 374, 385, 685 A.2d 60 (App.Div.1996). But the doctrine is only applicable when the party against whom it is to be applied "successfully asserted" the inconsistent position in the prior proceeding. Id. at 387, 685 A.2d 60. A position has been "successfully asserted"
if it has helped form the basis of a judicial determination. The judicial determination does not have to be in favor of the party making the assertion. If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position.

[Id. at 387-88, 685 A.2d 60.]
Here defendants sought leave to appeal on the sole contention that we should review the judgment in Laser II on the merits. Leave to appeal was granted on that basis. The procedural argument for reversal is inconsistent with that position, and the motion for leave to appeal was a prior proceeding. Therefore, the doctrine of judicial estoppel bars defendants from challenging on appeal the propriety of the manner in which the trial court exercised its jurisdiction in Laser II.
The next question is whether, in these unusual circumstances, we should review the judgment in Laser II on the merits. The State argues that we should because it spent a lot of time and money on Laser II and it would like an affirming decision binding on the trial courts.
*696 The Marksman may be a useful and accurate device. Laser II, supra, 314 N.J.Super. at 237-52, 714 A.2d 381. Moreover, I note that in the course of sustaining the use of "radar speedmeter" equipment by the State Police, the Supreme Court has observed, "In dealing with this as well as other law enforcement problems, enlightened officials properly avail themselves of scientific discoveries as soon as their reliability appears and modern courts of justice may not rightly lag far behind." State v. Dantonio, 18 N.J. 570, 583, 115 A.2d 35 (1955). Thus, if one could put aside the procedural irregularities committed in Laser II, and the further procedural irregularity of granting leave to appeal from Laser II four months after its final order was entered, an affirmance might well be beneficial to the State. But I am not prepared to ignore those irregularities. Therefore, I express no opinion with regard to the merits of the trial court's decision in Laser II.
My refusal to express an opinion on the merits of the decision in Laser II is based on the following reasons.
First, the notice of motion for leave to appeal, which in this case served as the notice of appeal, see R. 2:5-1(g), was out of time as a notice of appeal from Laser II. It was filed long after the forty-five day period provided by R. 2:4-1 and long after the extended period allowed by R. 2:4-4(a). Since the case does not involve indigent defendants, the notice of appeal was out-of-time and our further exercise of jurisdiction over that case would be inconsistent with State v. Altman, 181 N.J.Super. 539, 438 A.2d 576 (App.Div.1981), R. 2:4-1, R. 2:4-4, which provides that the "time within which an appeal may be taken may not be extended" other than in the presently inapplicable instances set forth in that rule, and R. 1:3-4. Cf. Cabrera v. Tronolone, 205 N.J.Super. 268, 500 A.2d 755 (App.Div.1985), certif. denied, 103 N.J. 493, 511 A.2d 666 (1986); In re Hill, 241 N.J.Super. 367, 372, 575 A.2d 42 (App.Div. 1990) ("Where the appeal is untimely, the Appellate Division has no jurisdiction to decide the merits of the appeal." (citations omitted)).
Second, the procedural irregularity in Laser II should not be ignored. This is not a case in which our review might remain appropriate despite the issue becoming moot while the appeal was pending. See, e.g., State v. Gartland, 149 N.J. 456, 464, 694 A.2d 564 (1997); State v. Wojtkowiak, 174 N.J.Super. 460, 462, 416 A.2d 975 (App.Div.1980). Here the issue was moot before Laser II began. Although there was a "semblance of judicial proceedings," see New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193, 198, 62 A.2d 677 (1948), there was an insufficient basis for the trial court to exercise its jurisdiction. Courts should not render advisory opinions or exercise jurisdiction in the abstract. See In re J.I.S. Indus. Serv. Co. Landfill, 110 N.J. 101, 104, 539 A.2d 1197 (1988); In re Requests to the Judges in Chancery for Advisory Opinions, 101 N.J.Eq. 9, 137 A. 151 (Ch.1927).
An appellate court may vacate an order granting leave to appeal as improvidently granted. S.N. Golden Estates, Inc. v. Continental Cas. Co., 317 N.J.Super. 82, 89-90, 91-92, 721 A.2d 307 (App.Div. 1998). That is the course I would follow here. Therefore, I would remand the case to the municipal court for further proceedings. Whether defendants would be entitled to withdraw their conditional guilty pleas, and such other issues as may appear, should be resolved in the first instance by that court.
NOTES
[1] See footnote 2, infra (op. p. 115, 740 A.2d at 693).
[2] Leave to appeal was timely filed within fifteen days of the July 18, 1998 orders. See R. 2:5-6. See also R. 2:4-4(b). The July 31, 1998 motion for leave to appeal filed in this Court was joined in by the State, and sought (a) consolidation of the four defendants' cases, "all of which arose from the issuance of speeding summonses involving the use and operation of the LTI Marksman ..."; (b) a stay of "all Morris County Superior Court proceedings in such cases and all other cases involving the use and operation" of the LTI Marksman; and (c) "`Leave to Appeal' the judgment of the Municipal Court of Parsippany and the decision of [Judge Stanton] as to the admissibility of motor vehicle speed readings obtained by" use of the LTI Marksman.
[3] At the May 18, 1998 plea proceedings in the Parsippany Municipal Court the following representations were placed on the record:

[MUNICIPAL PROSECUTOR]: ... As to these four, Judge, it's my understanding that there'll be an application to amend 69 in a 55. The defendants intend as all four to enter a conditional plea of guilty pursuant to Rule 7:6-2(c), reserving the right to challenge the admissibility of the laser device. Each one of these cases was a laser case.
And it's my understanding they will enter a conditional plea to the amended charge subject to the right to appeal the decision in reference to the laser device. THE COURT: Is that correct?
MR. MOHAMMED: That's correct, Judge. And for the record, Judge, there shall be no other applications of either the constitutional right of a speedy trial or fairness of any other issue. The only issue remaining is the admissibility of the laser gun.
[4] In passing we note that the LTI Marksman was found to be scientifically reliable in several out of state cases. Goldstein v. State, 339 Md. 563, 664 A.2d 375 (1995) (finding that the use of lasers to measure speed is generally accepted in the scientific community, and an inquiry into the LTI 20-20 device itself was unnecessary because the Frye test was designed to test theories and processes and should not be applied to each individual brand-name product); People v. Clemens, 168 Misc.2d 56, 642 N.Y.S.2d 760 (Justice Ct.1995) (finding based on testimony by Dr. Gazari, that the LTI 20-20 laser was reliable and generally acceptable); People v. DePass, 165 Misc.2d 217, 629 N.Y.S.2d 367 (Village Ct.1995) (after testimony by Dr. Gazari, the court was satisfied that the use of the Marksman laser is based upon well accepted scientific principles and that its speed readings are admissible). But see Izer v. State, 236 Ga.App. 282, 511 S.E.2d 625 (1999) (conviction of speeding motorist based upon evidence from a laser speed detection device was reversed because the State failed to bring forth any expert testimony to establish that using laser-based devices to calculate vehicle speed had reached a scientific stage of verifiable certainty).