THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL D. CANULLI, Defendant-Appellant.

Fourth District    No. 4—01—0094

Opinion filed June 30, 2003.

Michael D. Canulli, of Oak Brook, appellant *pro se*.

Timothy J. Huyett, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In December 2000, the trial court found defendant, Michael D. Canulli, guilty of speeding (625 ILCS 5/11—601(b) (West 2000)), sentenced him to two months' court supervision, and ordered him to pay a fine and costs. Defendant appeals, arguing that (1) the State did not lay an adequate foundation for the admissibility of the results of the Lidar laser unit, and (2) the State failed to prove him guilty beyond a reasonable doubt. We reverse.

## I. BACKGROUND

In June 2000, defendant received a ticket for traveling 80 miles per hour in a 65-mile-per-hour zone. 625 ILCS 5/11—601(b) (West 2000). The trial court conducted a bench trial. The evidence revealed that Gerry Garner and Daniel Fruge were both police officers with the Illinois State Police and were assigned to apprehend vehicles traveling on southbound Interstate 55 that were exceeding the speed limit. Garner was in his vehicle on the southbound entrance ramp to Interstate 55, north of the bridge. He was assigned to wait for a radio transmission from Fruge, who was positioned above Interstate 55 on an overpass measuring the speed of vehicles. Fruge described the device he was using to time the speed of vehicles traveling southbound

on Interstate 55 as a laser unit called "Lidar." Fruge was trained and tested in the use of Lidar and had used the laser unit for four to five years. The laser unit has an internal calibration, emits a tone, and has a red dot that is aimed at a vehicle. Fruge tested the accuracy of the laser unit at the "beginning of his detail" by testing the speed of a stationary post at "0."

At 10:20 a.m., Fruge put the laser on a white van-type vehicle traveling in the southbound lanes, keeping that vehicle in his sight the entire time. The digital reading on the laser unit was 80 miles per hour. Fruge testified that the vehicle was traveling at 80 miles per hour. Defendant objected, arguing lack of foundation and hearsay. The trial court allowed defendant a standing objection to such testimony. Fruge further testified that he radioed Garner to pull over a white van-type vehicle. Garner waited for the vehicle to appear, pursued, and stopped the vehicle at milepost 119, south of the overpass. Garner issued a citation to defendant for traveling 80 miles per hour in a 65-mile-per-hour zone at milepost 119.

Defendant did not cross-examine the State's witnesses. The State rested. Defendant made an oral motion for a directed verdict of not guilty, arguing that Garner's testimony was irrelevant to determining the speed of defendant's vehicle and should be ignored. Further, Fruge's testimony was not competent evidence either as to the accuracy or reliability of the laser unit. Defendant also argued that Fruge's testimony of speeding was hearsay and lacked proper foundation because the State presented no evidence of Fruge's expertise or scientific training. Defendant also argued that the State did not request or receive any ruling that the trial court had taken judicial notice of the accuracy and reliability of laser as a scientifically accurate means to measure speed. Defendant argued that although reviewing courts had taken judicial notice of Doppler radar, no reviewing court in Illinois had ever taken judicial notice of the reliability or accuracy of Lidar or laser technology as a means of measuring speed, thereby necessitating a *Frye* evidentiary hearing. See *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Defendant argued that absent scientific evidence or judicial notice, the laser evidence was inadmissible due to lack of proper foundation. Defendant argued, therefore, that the State failed to prove its case beyond a reasonable doubt. Defendant also argued that case law required the officer to check the laser equipment before and after the stop, not simply at the beginning of the shift.

The State requested time to respond. Over defendant's objection, the trial court allowed the State seven days to respond and defendant seven days to reply. The State responded, arguing that in December

1996, in a traffic case in the circuit court of that county, a *Frye* evidentiary hearing had been held regarding the admissibility of evidence obtained through the use of laser technology and equipment. At the conclusion of that *Frye* hearing, the court held that the evidence of laser technology was admissible, scientifically reliable, and an accepted means of obtaining proof of the speed of an automobile in circuit courts of Logan County. The State attached bystanders' reports from the judge and attorneys in that 1996 case who attested that a *Frye* hearing had been conducted. On October 16, 2000, the trial court in this case denied defendant's motion for a directed verdict.

On October 19, 2000, defendant filed his reply, which the trial court construed as a motion to reconsider. On November 3, 2000, the court denied that motion. On November 29, 2000, defendant's trial resumed. Defendant called the officers to testify. Garner's testimony was essentially the same as his previous testimony. He was assigned to wait for a radio transmission from Fruge. When Garner received the radio transmission, he was to intercept the cars described by Fruge and then write a ticket for the speeding violation. Garner testified that he had no personal knowledge of the speed of defendant's vehicle. He issued defendant a speeding ticket based solely upon what speed Fruge told him defendant's car was traveling.

Fruge testified that he was "clocking" southbound vehicles. He pointed the laser at oncoming cars. Fruge testified that he had no degrees or specialized training in mathematics, calculus, or engineering. He knew how to operate the laser unit but did not know how it operated internally. Fruge based his testimony that defendant was speeding on what the laser unit indicated.

Defendant testified on his own behalf. He testified that he was issued a ticket for speeding at milepost 119. Defendant noted Fruge was clocking north of the bridge. The ticket shows that defendant was speeding at milepost 119, which is south of the bridge. Defendant testified that he was not speeding 80 miles per hour at milepost 119.

The State argued that there was no doubt that defendant was clocked by laser traveling 80 miles per hour in a 65-mile-per-hour zone, and defendant was stopped at milepost 119. Defendant renewed his motion for a directed verdict, which the trial court denied. In closing argument, defendant argued that the court could not take judicial notice of the use of Lidar laser technology as a scientific principle to measure speed. Defendant further argued that the State failed to ask the court to take judicial notice of Lidar laser technology. Defendant also argued that there was no testimony in the record as to the speed of his vehicle at milepost 119, south of the bridge not north of the bridge, where Fruge had clocked defendant's car.

The State argued in closing argument that the evidence was sufficient that defendant was speeding. Milepost 119 is the location where the ticket was written. If any error occurred, it would be "harmless or clerical at best." The citation is not evidence of a crime but only notice of an alleged crime.

Following closing, the trial court asked defendant if he were aware that the court had a transcript of the proceeding in the other case where a *Frye* hearing was held as to laser technology. Defendant informed the court that he did not receive a copy. He had only received the State's response to his motion, which had some bystanders' reports attached. Defendant argued that the court could not consider the bystanders' reports or the transcript because they involved a different court case and not an appellate court case. Defendant asked the court to clarify whether it considered the bystanders' reports or the report of proceedings in that previous case when it ruled on his motion for a directed verdict. The court stated in part:

> "I did not have this transcript at the time [I denied the motion]. I did have the bystander's report. I did have the [S]tate's motion or response to your motion. I didn't have any response in my hand from you at that point in time. It does still concern me that in this case I denied that motion based upon a hearing I didn't have, based upon bystander's reports of another traffic case back in 1996. Bothered me then, it bothers me now. I am going to revisit that issue."

The trial court made a factual finding that the ticket did not have the correct milepost on it. The court was not sure, however, whether that was a necessary element. The court took the matter under advisement. On December 13, 2000, the court found that the State proved defendant guilty beyond a reasonable doubt. Later that month, the court sentenced defendant to two months' court supervision and ordered him to pay a $75 fine and costs.

This appeal followed.

## II. ANALYSIS

### A. Motions Taken With The Case

Initially, we note that defendant has filed two motions that were taken with the case.

### 1. *Report of Proceedings*

■ Defendant filed a motion to supplement the record on appeal with the report of proceedings from the hearing on his motion for approval of his bystander's report from the first day of his bench trial. The State concedes that it did not object to the bystander's report in the trial court. However, on appeal, the State argues that the

bystander's report was not filed in compliance with Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)), and this court may reject a bystander's report that has been erroneously certified by a trial judge. *Lofendo v. Ozog*, 118 Ill. App. 3d 237, 241-42, 454 N.E.2d 806, 810 (1983). We find that the State forfeited its right to complain of any error regarding the submission of the bystander's report. *People v. Johnson*, 334 Ill. App. 3d 666, 680, 778 N.E.2d 772, 784 (2002), (" 'A party forfeits [its] right to complain of error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' *In re E.S.*, 324 Ill. App. 3d 661, 670, 756 N.E.2d 422, 430 (2001)"). We, therefore, grant defendant's motion to supplement the record with the report of proceedings from his motion for approval of his bystander's report from the first day of his bench trial.

### 2. Motion To Correct and Conform Record on Appeal and Other Relief

Defendant also asks this court to strike from the record on appeal the report of proceedings from an unrelated case, People v. Sobol, No. 96—TR—5235 (Logan County), where a *Frye* evidentiary hearing was conducted to determine whether to admit evidence regarding the use of laser technology to determine the speed of a vehicle. Defendant contends that the report of proceedings should not be included and considered by this court when addressing the merits of the issues on appeal in his case because it was not part of the State's case, was filed without leave of the trial court or without proper notice, and was not considered by the court in its ruling.

■ Illinois law generally recognizes the power of a trial court to allow a litigant to reopen his or her case in an appropriate circumstance. *People v. Myles*, 257 Ill. App. 3d 872, 886, 629 N.E.2d 648, 659 (1994). Even after the State has rested its case, the court has the power to allow a party to put on additional evidence. See *People v. Faulkner*, 64 Ill. App. 3d 453, 457, 381 N.E.2d 321, 324 (1978). The exercise of such discretion will not be reversed absent a clear showing of abuse. *Myles*, 257 Ill. App. 3d at 886, 629 N.E.2d at 659. In the present case, after the State rested, defendant moved for a directed verdict, and the trial court permitted the State to respond to defendant's argument that a *Frye* hearing was required. By permitting the State to respond, the court essentially permitted the State to reopen its case. We do not find that the court abused its discretion in permitting the State to reopen its case under the circumstances here and include the bystanders' reports and report of proceedings of the *Frye* hearing conducted regarding the use of laser technology in another case.

■ The purpose of appellate review is to evaluate the record

presented in the trial court, and review must be confined to what appears in the record. *People v. Heaton*, 266 Ill. App. 3d 469, 477, 640 N.E.2d 630, 636 (1994). The record indicates that the trial court did not consider the report of proceedings when it denied defendant's motion for a directed verdict. Defendant, however, filed a motion to strike the report of proceedings from the Sobol case, and the trial court denied his motion to strike the transcript. In recalling the discussion regarding the transcript that occurred on the second day of defendant's trial, the court stated:

"So it would seem to me \*\*\* that I didn't have the transcript when I ruled on the question of the reliability of LIDAR, but that is my recollection of how that took place.

\*\*\*

My recollection again, that has been some months ago, was that when we started that proceeding [the second day of defendant's trial,] a discussion was had concerning the fact that a transcript had been received by the court and I was making, at least in my mind, made it part of the record to not bolster it but to supplement the [b]ystander[s'] [r]eport because obviously the transcript that was presented is a better record of the *Frye* [h]earing that was held. So I know I had it when we started that second day of trial, and in my mind I'm sure we discussed at that point whether or not it should be made part of the file or at least I think [defendant] made the request that it not be made part of the file, and I believe that I said as far as I was concerned it was the best evidence of what had taken place at the prior *Frye* [h]earing and it should be included."

It is clear from the record that the court did not strike the report of proceedings from the record. Therefore, those proceedings were part of the record in the trial court. Accordingly, we find that the report of proceedings is properly part of the record on appeal, and we deny defendant's motion to correct and conform the record on appeal and other relief.

## B. *Frye* Evidentiary Hearing

Defendant argues that the State failed to prove beyond a reasonable doubt that he was speeding. Specifically, defendant contends that the State's entire case was predicated upon the use of Lidar laser technology and equipment, and the State failed to lay the proper foundation for its admission, did not request the court take judicial notice of its reliability, and did not conduct a *Frye* hearing. The State argues that defendant has forfeited review of this issue because he failed to raise it in a posttrial motion.

■ ■ As a general rule, a defendant must object to an error at trial

and include the objection in a posttrial motion to preserve it for review on appeal. *People v. Basler*, 193 Ill. 2d 545, 549, 740 N.E.2d 1, 3 (2000). Defendant objected and raised the issue again in his reply in support of his motion for directed verdict. The trial court characterized this reply as a motion to reconsider and denied the motion. Defendant did not file any posttrial motion after the court rendered its verdict or after sentencing. We find, therefore, defendant forfeited review of this issue. However, a reviewing court may override considerations of forfeiture where plain errors or defects affecting substantial rights are involved. 134 Ill. 2d R. 615(a). The plain error doctrine allows a reviewing court to consider a trial error not properly preserved when (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such a magnitude that the defendant was denied his right to a fair trial. *People v. Byron*, 164 Ill. 2d 279, 293, 647 N.E.2d 946, 953 (1995). The only evidence that defendant was speeding 80 miles per hour in a 65-mile-per-hour zone was ascertained from the use of a Lidar laser device technology. If the trial court erred in not conducting a *Frye* hearing, defendant was denied his right to a fair trial. Therefore, we will address the merits of defendant's argument.

■ The determination of whether to admit evidence about novel scientific techniques rests in the discretion of the trial court. *People v. Eyler*, 133 Ill. 2d 173, 211-12, 549 N.E.2d 268, 285 (1989). The exclusive test for the admission of scientific evidence in Illinois is governed by the test set forth in *Frye. Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 76-77, 767 N.E.2d 314, 323 (2002). The *Frye* test has two prongs. First, the trial court must determine whether the scientific principle, technique, or test offered by the expert to support his or her conclusion is "new" or "novel." *Donaldson*, 199 Ill. 2d at 78-79, 767 N.E.2d at 324. Second, if the scientific technique is "new" or "novel," the trial court conducts a *Frye* evidentiary hearing to determine whether the technique has gained general acceptance in the particular scientific community. *Donaldson*, 199 Ill. 2d at 79, 767 N.E.2d at 324-25. Therefore, pursuant to *Frye*, scientific evidence is only admissible at trial if the methodology or scientific principle upon which the opinion is based is " 'sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *Donaldson*, 199 Ill. 2d at 77, 767 N.E.2d at 324, quoting *Frye*, 293 F. at 1014. A reviewing court will not disturb a trial court's determination to admit evidence pursuant to the *Frye* standard absent an abuse of discretion. *Eyler*, 133 Ill. 2d at 211-12, 549 N.E.2d at 285.

■ A proponent of evidence subject to *Frye* can prove the general acceptance of the proffered evidence in several ways. "[T]he proponent *** must prove general acceptance, by surveying scientific publica-

tions, judicial decisions, or practical applications, or by presenting testimony from scientists as to the attitudes of their fellow scientists." 1 J. Strong, McCormick on Evidence § 203, at 870 (4th ed. 1992) (hereinafter McCormick); *People v. Kirk*, 289 Ill. App. 3d 326, 332, 681 N.E.2d 1073, 1077 (1997). However, "[u]nless the question of general acceptance has been thoroughly and thoughtfully litigated in the previous cases, *** reliance on judicial practice is a hollow ritual." McCormick § 203, at 870 n.20.

No reported cases in Illinois address the admissibility of Lidar laser evidence to measure the speed of vehicles. Where the question of the general acceptance of a new scientific theory is raised, the court is oftentimes asked to establish the law of the jurisdiction for future cases. *People v. Dalcollo*, 282 Ill. App. 3d 944, 955, 669 N.E.2d 378, 385 (1996). The formulation of the law is a "quintessentially appellate function." *Dalcollo*, 282 Ill. App. 3d at 955, 669 N.E.2d at 385. In the present case, however, the trial court took judicial notice of a *Frye* hearing that was conducted on the acceptance in the scientific community of the use of laser technology to measure the speed of vehicles in another case in the circuit court. Courts are not bound to follow decisions of equal or inferior courts. *Village of Northbrook v. Cannon*, 61 Ill. App. 3d 315, 322, 377 N.E.2d 1208, 1213 (1978). Moreover, the *Frye* hearing in the Sobol case occurred in 1996, was conducted at the sentencing hearing after defendant pleaded guilty, involved different parties, and the testimony centered on the reliability of the LTI 2020 (a laser-based speed-detection system manufactured by Laser Technology, Inc.), rather than the Lidar laser unit used here. In addition, the record indicates that defendant was not aware that a *Frye* hearing was going to be conducted prior to the sentencing hearing and, therefore, did not present any evidence or have an expert present. When the trial court asked defense counsel if he had any further questions of the expert witness, defense counsel stated:

> "Well, I don't have any scientific expert obviously because I just got the notice, and I was[,] as I explained earlier to the court[,] somewhat surprised to find out that the lasers have been far from accepted in the legal community. I think the witness' own testimony is that there has [*sic*] been ten out of fifty states that have accepted them so far. I have not been able to find other than one decision in New York that has accepted it as an appellate case obviously because it is a speeding device[;] maybe not all that many cases get to the appellate court that quickly.
>
> I believe at least with the LTI 2020 it is far from being an accepted device, and I think where there is no knowledge, the laser itself tests distances, we don't know the calibrations that go into

[*sic*] get the numbers. My client has plead[ed] guilty. I'm not here to belabor the issue, but there are certainly questions in my mind about its accuracy."

Based on the transcript from the *Frye* hearing conducted in Sobol, we find that the issue of scientific acceptance of laser technology to measure the speed of vehicles has not been adequately litigated. See *Donaldson*, 199 Ill. 2d at 84, 767 N.E.2d at 328 (relying exclusively upon prior judicial decisions to establish general scientific acceptance can be a "hollow ritual" if the underlying issue of scientific acceptance has not been adequately litigated).

■ We find the use of Lidar laser technology to measure the speed of an automobile constitutes "new" or "novel" evidence. Therefore, a *Frye* evidentiary hearing was necessary to determine whether these instruments were admissible as a matter of law. The trial court erred in admitting the results of the Lidar laser unit without conducting a *Frye* hearing. Because the only evidence of the speed of defendant's vehicle was obtained through the use of a Lidar laser unit, whose general acceptance has not been thoroughly litigated in precedential cases, defendant was denied a fair trial. Moreover, because the State did not present the speed of defendant's vehicle through any other evidence, no fact finder could find beyond a reasonable doubt that defendant was traveling 80 miles per hour in a 65-mile-per-hour zone. Double jeopardy considerations, therefore, prevent retrial.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment without remand.

Reversed.

KNECHT and COOK, JJ., concur.