

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1304-08

**PHILLIP JASON HALL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### JOHNSON COUNTY

PRICE, J., filed a concurring opinion in which JOHNSON and HOLCOMB, JJ., joined.

### CONCURRING OPINION

The court of appeals in this cause ultimately held that the trial court abused its discretion

in failing to grant the appellant's motion to suppress.[1] Along the way, the court of appeals held

---

[1] *Hall v. State*, 264 S.W.3d 346, 350 (Tex. App.—Waco 2008) ("The [trial] court abused its discretion by denying Hall's pretrial suppression motion because the State failed to prove the reliability of the LIDAR technology on which the officer relied to determine Hall was speeding. Accordingly, we sustain Hall's sole issue.").

that LIDAR technology is novel scientific evidence that is admissible only after a "full-blown" gate-keeping hearing under *Kelly v. State*.[2] Today this Court holds (as I understand it) that, because the Texas Rules of Evidence do not apply to a hearing on a pre-trial motion to suppress evidence, and because the requirement of a *Kelly* hearing is a product of Rule 702 of the Rules of Evidence, it cannot be said—at least strictly speaking—that the Rules of Evidence ever require a *Kelly* hearing, *per se*, at a hearing on a pre-trial motion to suppress; and that the court of appeals erred to conclude otherwise. I agree with this very limited holding. Whether *some* type of gate-keeping hearing must be held in the context of a pre-trial suppression hearing to determine the admissibility of scientific evidence, and what the characteristics of such a hearing ought to be are, of course, further questions that we need not resolve in this case today.

The purpose of a *Kelly* hearing is to provide an *in camera* forum for the proponent of novel scientific evidence to demonstrate that it is reliable enough to be admissible in a criminal trial. (Incidently, because the purpose of a *Kelly* hearing is to determine the admissibility of evidence, the Rules of Evidence do not apply in the *Kelly* hearing itself, even if it is conducted mid-trial.[3]) But the appellant in this case never requested a hearing to determine the

---

[2] 824 S.W.2d 568 (Tex. Crim. App. 1992).

[3] *See* Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 2 TEXAS PRACTICE: GUIDE TO THE RULES OF EVIDENCE § 702.7 (3d ed. 2002), at 75 & n.22 ("Because reliability determinations are made under [TEXAS RULES OF EVIDENCE] 104(a), the court may consider inadmissible evidence."). Thus, the Rules of Evidence do not govern the admissibility of evidence at a hearing to establish the admissibility of evidence.

admissibility of evidence that is the product of LIDAR technology,[4] either at the pre-trial suppression hearing or during his trial. He never argued that the State should have to establish the reliability of LIDAR technology before evidence based upon that technology could be admitted at the motion to suppress hearing. In fact, without lodging an objection of any kind, the appellant allowed Officer Phariss to testify that he stopped the appellant because of the LIDAR reading. By failing to object, the appellant failed to put the State, as proponent of the novel scientific evidence, to whatever burden it may have (assuming it has *any* such burden in a pre-trial hearing context, where the Rules of Evidence do not apply—I offer no opinion on this question) to establish its reliability as a prerequisite to admissibility.[5] Therefore, this is not a case about the *admissibility* of novel scientific evidence at a pre-trial suppression hearing. Indeed, because a first-tier appellate court may not reverse a conviction without inquiring whether the purported error was properly preserved at trial,[6] the court of appeals could *not* have reversed (and, as I read its opinion, *did* not reverse) the appellant's conviction

---

[4]
     In his motion to suppress, the appellant asked the trial court to suppress the fruits of the stop and subsequent search unless the State could prove that he was "stopped with probable cause/reasonable suspicion." While he alleged (paradoxically) that the State should have to prove probable cause "by clear and convincing evidence," and cited *Kelly*, he nowhere argued that evidence with respect to LIDAR technology should be deemed inadmissible at the pre-trial hearing.

[5]
     *See* Goode, Wellborn & Sharlot, *supra*, at 73 ("The party opposing the admission of an expert's testimony must timely object or risk waiving the ability to challenge the expert's testimony on appeal. Once an objection is made, the proponent of the testimony bears the burden of demonstrating its reliability.").

[6]
     *E.g.*, *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

on the basis of a claim about the *admissibility* of LIDAR technology at the pre-trial suppression hearing.

Instead of challenging the *admissibility* of Phariss's LIDAR-based testimony, the appellant was really challenging the *sufficiency* of that testimony—sufficiency to establish probable cause that he had been speeding, so as to justify his arrest.[7] He argued that, without evidence to establish the reliability of LIDAR technology or Phariss's proficiency in properly applying it in his case, the State did not adduce sufficient evidence to show that Phariss had probable cause to stop him for speeding. This is different from the issues 1) whether LIDAR-based testimony is admissible at a pre-trial suppression hearing, 2) whether *Kelly* should apply to determine admissibility in that context, or 3) whether, in the absence of the applicability of the Rules of Evidence, some functional equivalent to, or less-exacting version of, a *Kelly* hearing ought nevertheless to be required, as a matter of decisional law, to determine admissibility.

It is true that, in addressing the sufficiency issue, the court of appeals alluded to the *Kelly* criteria, and even "held" that, to be admissible, LIDAR technology must be established

---

[7] It is true that, at one point in his brief on appeal, the appellant argued (somewhat inartfully) that "[t]he [trial] court erred in allowing scientific testimony concerning the speed detector Lidar equipment and the results of the Lidar speed on the appellant's automobile in violation of Rule 702 Texas Rules of Evidence, **_Kelly v. State_**, 824 S.W.2d 568 (Tex. Crim. App. 1992[.]" But, as already noted, the appellant did not preserve such an error for appeal. In any event, the major thrust of his argument was that the State failed to establish probable cause, not that it was erroneously allowed to introduce objected-to evidence with a novel scientific basis at the suppression hearing.

in a "full-blown" *Kelly* hearing.[8]  But it did so, it seems to me, only in order to make the point that LIDAR constitutes a new and unproven (at least in the courts of Texas) technology, the reliability of which must be demonstrated by the party with the burden of proof before its relevance (much less its probative value to establish probable cause) may be assumed. Ultimately the court of appeals simply agreed with the appellant that, absent testimony showing what LIDAR technology is, what it purports to prove, how reliably it proves it, and whether Phariss knew how to operate it properly and did so on the day in question, the State failed to supply probable cause to believe the appellant was speeding.

I agree with the court of appeals's conclusion that the evidence did not establish probable cause.  Suppose Phariss had testified that he believed the appellant was speeding only because a blue cube on Phariss's dashboard had indicated so.  Without knowing any more about the blue cube, a rational fact finder (here, the trial court as arbiter of pre-trial suppression issues) would have no way to conclude that Phariss's belief was a reasonable one.  Neither common sense nor common experience informs the fact finder that a blue cube is capable of accurately gauging the speed of an automobile.  Without knowing anything about the empirical track record of the blue cube, it cannot be assumed that Phariss's reliance upon it was reasonable.  Perhaps there is some scientific principle involved, and the blue cube utilizes technology based upon that scientific principle that, when properly applied, has been shown

_____

[8]    *Hall v. State*, *supra* at 350.

empirically to measure car speed accurately. If that is so, but the courts of Texas have not yet generally recognized it, then the party with the burden to show probable cause must present at least *some* evidence (never mind the quantum, for now) to demonstrate it.[9] But testimony about nothing more than the blue cube itself, without more, would not demonstrate the reasonableness of Phariss's belief in relying upon it.

I do not see how LIDAR technology is (at the present time, at least) any different than my hypothetical blue cube. Common sense and experience tell us nothing about LIDAR, and I am aware of no court in Texas (and the State cites none) that has recognized the technology. It is up to the party with the burden of proof (here, the party who must establish the reasonableness of Phariss's belief that the appellant was speeding) to show that he had some reasonable basis for believing that LIDAR technology, properly applied, can give him reliable information about the speed of a car, and that he was, in fact, applying the technology properly when he measured the appellant's speed. In this case, the State presented evidence of what Phariss believed and why he believed it, but it presented no evidence whatsoever to show the reasonableness of Phariss's reliance on LIDAR technology to support his belief. He might as well have testified that he believed the appellant was speeding simply because a blue cube told

---

[9] *Cf. Hernandez v. State*, 116 S.W.3d 26, 29 & n.4 (Tex. Crim. App. 2003) (courts may take judicial notice of reliability of scientific evidence once it is recognized as reliable by "the pertinent professional community and has been accepted in a sufficient number of trial courts" after adversarial testing; "Trial courts are not required to re-invent the scientific wheel in every trial. However, some trial court must actually examine and assess the reliability of the particular scientific wheel before other courts may ride along behind.").

him so.

We need not say anything in this case about *how* reliable the proponent of novel scientific evidence must show it to be at a pre-trial suppression hearing in order to establish either its admissibility at that hearing (since that is not an issue in this case) *or* its sufficiency to demonstrate probable cause. Here, the State, as proponent of the evidence, made absolutely *no* showing of reliability. Therefore, whatever standard we might ultimately articulate for how reliable the proponent must show the novel scientific evidence to be before it alone can establish probable cause, the State did not satisfy it in this case. For this reason, I would affirm the judgment of the court of appeals.

With these additional comments, I join the majority opinion.


Filed:          September 16, 2009
Publish