**Phillip Jason HALL, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 10–07–00213–CR.**

Court of Appeals of Texas, Waco.

July 30, 2008.

Richard C. McConathy, McConathy & McConathy, Irving, for Appellant.

Bill Moore, County Atty. for Johnson County, Cleburne, or Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Phillip Jason Hall of driving while intoxicated. The court sentenced him to six months in jail and a $1,000 fine, suspended imposition of sentence, and placed him on community supervision for two years. Hall contends in his sole issue that the arresting officer lacked probable cause because the State failed to prove the reliability of the LIDAR device which the officer used to determine Hall was speeding. We will reverse and remand.

Hall filed a pretrial suppression motion alleging that the traffic stop was made without probable cause or reasonable suspicion. At the suppression hearing, he explained that he was challenging the reliability of the LIDAR technology which served as the basis for the stop.

The arresting officer testified that the LIDAR device indicated Hall was traveling seventy-six miles per hour in an area where the posted speed limit was sixty-five. This was the sole basis on which he stopped Hall's car, and he provided no testimony regarding the manner in which Hall was driving. The officer testified that he is not certified to use LIDAR equipment. When he went on duty that night, he turned the LIDAR device on and it went "through a self-test process" which indicated that it was functioning properly. He testified that he was not sure whether there is a department employee or contractor who maintains the LIDAR equipment and ensures its accuracy and reliability.

▮▮▮▮ Scientific evidence must be helpful to the trier of fact to be admissible under Rule of Evidence 702, which among other things requires that the evidence be reliable. *Emerson v. State,* 880 S.W.2d 759, 763 (Tex.Crim.App.1994); *State v. Rudd,* 255 S.W.3d 293, 301 (Tex.App.-Waco 2008, pet. ref'd). To be reliable, scientific evidence must satisfy three criteria: "1) the underlying scientific theory must be valid; 2) the technique applying the theory must be valid; and 3) the technique must have been applied properly on the occasion

in question." *Emerson*, 880 S.W.2d at 763 (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992)); *Rudd*, 255 S.W.3d at 301. The proponent of scientific evidence bears the burden of proving its reliability by clear and convincing evidence. *Hernandez v. State*, 116 S.W.3d 26, 30 (Tex.Crim.App.2003) (per curiam); *Kelly*, 824 S.W.2d at 573.

▇▇▇ In this case, the parties dispute whether LIDAR technology is novel scientific evidence. The Court of Criminal Appeals has explained why it is important to differentiate between novel scientific evidence and "established" scientific evidence, the reliability of which is generally accepted in the relevant scientific community and in a sufficient number of courts.

A party seeking to introduce evidence of a scientific principle need not always present expert testimony, treatises, or other scientific material to satisfy the *Kelly* test. It is only at the dawn of judicial consideration of a particular type of forensic scientific evidence that trial courts must conduct full-blown "gatekeeping" hearings under *Kelly*. Once a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert/Kelly* hearings, subsequent courts may take judicial notice of the scientific validity (or invalidity) of that scientific theory based upon the process, materials, and evidence produced in those prior hearings.

Similarly, once some courts have, through a *Daubert/Kelly* "gatekeeping" hearing, determined the scientific reliability and validity of a specific methodology to implement or test the particular scientific theory, other courts may take judicial notice of the reliability (or unreliability) of that particular methodology.

Trial courts are not required to reinvent the scientific wheel in every trial. However, some trial court must actually examine and assess the reliability of the particular scientific wheel before other courts may ride along behind. Some court, somewhere, has to conduct an adversarial gatekeeping hearing to determine the reliability of the given scientific theory and its methodology.

*Hernandez*, 116 S.W.3d at 28–29 (footnotes omitted).

The State argued in the trial court that LIDAR "is a laser device and it's been admissible by statute in every court in this state without any predicate to its [admissibility]." However, the State did not cite any particular statute or court decision to support this argument. In its appellate brief, the State cites several Texas cases affirming the reliability of RADAR technology and several decisions from other states affirming the reliability of LIDAR technology.

▇▇▇ RADAR and LIDAR are not the same.[1] *See* Alan LoFaso, *Review of Selected 1998 California Legislation: Transportation and Motor Vehicles*, 30 McGEORGE L. REV. 819, 822 (1999).

Radar uses radio waves to measure speed by calculating the frequency variations or "Doppler shift" of the wave reflecting off a moving vehicle. Light Detection and Ranging (LIDAR) is similar to radar, except that it uses an infra red light (a laser beam) in lieu of radio

---

1. "RADAR," of course, is the well-known acronym for Radio Detection and Ranging. Jeffrey A. Weiss, *Maritime Disasters Through the Ages*, 32 J. MAR. L. & COM. 215, 227 n. 46 (2001). "LIDAR," by contrast, is the acronym for Light Detection and Ranging. Alan LoFaso, *Review of Selected 1998 California Legislation: Transportation and Motor Vehicles*, 30 McGEORGE L. REV. 819, 822 (1999).

waves to measure the speed of a moving object.

*Id.* (footnotes omitted). Therefore, judicial decisions affirming the reliability of RADAR technology are irrelevant to our inquiry.

■■■ The parties have not cited and our research has not disclosed any Texas authorities confirming the reliability or admissibility of LIDAR technology. Therefore, we hold that LIDAR technology is novel scientific evidence which may be admissible only after its reliability has been judicially determined in a "full-blown 'gatekeeping' hearing[ ] under *Kelly.*" *See Hernandez,* 116 S.W.3d at 29; *see also People v. Canulli,* 341 Ill.App.3d 361, 275 Ill.Dec. 207, 792 N.E.2d 438, 445 (2003) ("We find the use of Lidar laser technology to measure the speed of an automobile constitutes 'new' or 'novel' evidence.").

■■■ As in *Hernandez,* the prosecution failed to offer any evidence to establish the reliability of LIDAR technology as a means of measuring the speed of a motor vehicle. *See Hernandez,* 116 S.W.3d at 31. The authorities cited by the State on appeal which support the reliability of this technology may be beneficial in resolving this issue, but they must be first presented to the trial court in a *Kelly* gatekeeping hearing. *Id.* at 30–32 ("judicial notice on appeal cannot serve as the sole source of support for a bare trial court record concerning scientific reliability").

Notwithstanding the admissibility of the LIDAR evidence, the State further contends that the court did not abuse its discretion because the LIDAR device merely confirmed the officer's observation that Hall was speeding. However, the record does not support this contention. The officer testified that the reading on the LIDAR device was the sole basis for the stop. He did not offer any testimony to suggest that he independently observed

Hall driving at a speed which he believed to be (1) in excess of the posted limit or (2) greater than reasonable and prudent under the circumstances. *See* Tex. Transp. Code Ann. § 545.351(a) (Vernon 1999); *cf. Icke v. State,* 36 S.W.3d 913, 915–16 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) (court did not reach issue of admissibility of radar evidence because officer testified that, based on his observations, he believed defendant was speeding and then confirmed those observations with radar); *Ochoa v. State,* 994 S.W.2d 283, 285 (Tex. App.-El Paso 1999, no pet.) (defendant not harmed by erroneous admission of evidence regarding radar because officer testified without objection that he observed defendant driving at a "high rate of speed").

The court abused its discretion by denying Hall's pretrial suppression motion because the State failed to prove the reliability of the LIDAR technology on which the officer relied to determine Hall was speeding. Accordingly, we sustain Hall's sole issue.

We reverse the judgment and remand this cause for further proceedings consistent with this opinion. *See Owens v. State,* 135 S.W.3d 302, 312 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (reversing and remanding for new trial after erroneous admission of expert testimony regarding retrograde extrapolation); *Bagheri v. State,* 87 S.W.3d 657, 661 (Tex.App.-San Antonio 2002), *aff'd,* 119 S.W.3d 755 (Tex. Crim.App.2003) (same).

Chief Justice GRAY dissents. A separate opinion will not issue.