Phillip Jason HALL, Appellant,

v.

The STATE of Texas.

No. PD–1304–08.

Court of Criminal Appeals of Texas.

Sept. 16, 2009.

---

7. *Id.*

Richard C. McConathy, Irving, for appellant.

Jeffrey L. Van Horn, State Prosecuting Atty., Austin, for state.

## OPINION

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

At a suppression hearing, Phillip Jason Hall challenged the reliability of a LIDAR device that Officer Floyd Lee Phariss used to measure Hall's speed. Hall claimed that, because the State failed to prove the reliability of the LIDAR device, Officer Phariss's decision to stop him for speeding was not supported by probable cause. The Waco Court of Appeals held that the

trial judge erred by failing to hold a Rule 702 *Kelly* gatekeeping hearing to evaluate the device's reliability.[1] We disagree. Rule 702 does not apply to suppression hearings.[2] However, we affirm the court of appeals's judgment because it correctly determined that the stop was not supported by probable cause.

## Background

In July 2006, Officer Phariss stopped Hall without a warrant for speeding in the City of Venus on Highway 67. The Light Detection and Ranging (LIDAR) device that Officer Phariss used to monitor traffic indicated that Hall was traveling eleven miles per hour over the sixty-five mile-per-hour speed limit. While talking with Hall, Officer Phariss noticed that Hall's breath smelled of alcohol. Officer Phariss's partner, Officer John Crane, ordered Hall to perform several field sobriety tests. Based on Hall's performance on the tests, Officers Phariss and Crane concluded that Hall was intoxicated and arrested him for driving while intoxicated (DWI).

Hall was charged with DWI. Before his jury trial, Hall filed a motion to suppress. He claimed that the State was required to prove, by clear and convincing evidence, that Officer Phariss had probable cause or reasonable suspicion to stop Hall. In support of his claim, Hall cited our decision in *Kelly v. State*.[3] In that case, we held that, under Rule 702 of the Texas Rules of Evidence, the proponent of scientific evidence must show, by clear and convincing evidence, that the proffered evidence is

1. *Hall v. State*, 264 S.W.3d 346, 350 (Tex. App.—Waco 2008).

2. *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim.App.2002).

3. 824 S.W.2d 568 (Tex.Crim.App.1992); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (adopting the same reliability and relevance standard).

reliable before it can be admitted into evidence.[4]

During the pretrial suppression hearing, Hall expanded on the argument presented in his motion. He maintained that for the results of the LIDAR device to be admissible at trial under *Kelly*, a scientific expert must testify that the machine is "scientifically correct and reliable." He then asked the judge to suppress "the probable cause" and grant his suppression motion. The State responded, contending first that the standard for admissibility of scientific evidence is not applicable to motions to suppress and that the laser device does not constitute novel scientific evidence. The State also argued that the good faith exception to the warrant requirement is applicable in this case.

> [T]he standard here is reasonable suspicion. We're not getting to any level higher than that. All [Officer Phariss] has to be able to testify to is that he reasonably suspected, upon the results, that [Hall] was speeding. That's the same reason why, legally we're allowed to have a good faith exception on a resident search warrants [sic]." As long as the officer reasonably relies on what's provided to him, then they're allowed to proceed further and investigate, and that's exactly what he did here.

Testifying about his use of the LIDAR device on the night that he stopped Hall, Officer Phariss stated that, before his shift he turned on the device and that it initiated a self-test process. Officer Phariss stated that the device indicated that it passed all the "functions." Officer Phariss explained that there is a little sight on top of the device; "[i]nside of that site's [sic] a small red dot. And once you place that red dot on the vehicle and you push the trigger switch, it will send out a laser and that will read the speed of the vehicle. . . ." Officer Phariss stated that he was not certified to use the device and that he was uncertain whether anyone maintained the device to ensure its reliability and accuracy. Finally, Officer Phariss stated that the LIDAR device provided the sole basis for stopping Hall.

Without entering any factfindings or conclusions of law, the trial judge denied Hall's motion. The jury later found Hall guilty, and the trial judge sentenced Hall to 180 days in jail and assessed a $1,000 fine. The judge then suspended Hall's sentence and placed him on probation for two years.

### Court of Appeals

In his sole point of error, Hall argued in the Waco Court of Appeals that Officer Phariss did not have probable cause to stop him for speeding because the State failed to prove that the LIDAR device was reliable.[5] Over Chief Justice Gray's dissent, the court of appeals agreed with Hall. The court determined that, under Rule 702, as interpreted in *Kelly v. State*, the State failed to prove the reliability of LIDAR technology.[6] In making this determination, the court observed that there are no Texas authorities confirming the reliability or admissibility of LIDAR technology.[7] As a result, the court concluded "that LIDAR technology is novel scientific evidence which may be admissible only after its reliability has been judicially determined in a "full-blown [Rule 702] 'gatekeeping' hearing under *Kelly*."[8] Finally,

4. *Id.* at 572.

5. *Hall,* 264 S.W.3d at 348.

6. *Id.* at 350.

7. *Id.*

8. *Id.*

"[n]otwithstanding the admissibility of LIDAR evidence," the court rejected the State's argument that the LIDAR device confirmed Officer Phariss's observation that Hall was speeding.[9] Officer Phariss offered no testimony suggesting that he, independent of the LIDAR device, observed Hall speeding.[10] The court then reversed the trial court's judgment, holding that the trial judge "abused [his] discretion by denying Hall's pretrial suppression motion because the State failed to prove the reliability of the LIDAR technology...."[11] As a result, the court reversed and remanded the case for proceedings consistent with its opinion.[12]

### State's Petition for Discretionary Review

We granted the State's petition for discretionary review to decide whether the court of appeals erred by holding that the trial judge was required to hold a Rule 702 *Kelly* gatekeeping hearing "to determine the scientific reliability of information relied upon by the arresting officer as probable cause for the stop."

### Analysis and Disposition

■ Rule 702, which governs the admissibility of expert testimony at trial:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, fied as an expert by knowledge, skill,

expertise, training, or education may testify thereto in the form of an opinion or otherwise.[13]

As mentioned above, when interpreting Rule 702 in *Kelly*, we held that the trial judge, as the gatekeeper, must determine whether an expert's testimony on a scientific theory is reliable and relevant to the factfinder.[14]

■ We conclude that the court of appeals erred in applying Rule 702. Texas Rule of Evidence 101, which defines the title and scope of the rules, specifically provides that the Rules of Evidence, with the exception of those that concern privileges, do not apply to suppression hearings.[15] Thus, evidence that is otherwise inadmissible at trial under the Rules of Evidence may well be admissible at a suppression hearing. So in this case, because Rule 702's requirements, as set out in *Kelly*, do not apply to suppression hearings, there is no threshold admissibility determination under the Rules of Evidence. Therefore, we hold that the court of appeals erred to conclude that the trial judge, in ruling on the admissibility of the LIDAR technology, as utilized in this case, was required to hold a Rule 702 *Kelly* gatekeeping hearing to determine the reliability of that technology.

■ Next, we turn to the court of appeals's disposition of the case. The court ultimately ruled that the evidence

---

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. TEX.R. EVID. 702 (Vernon 2003) (eff. Mar. 1, 1998) (originally promulgated in 1986 in the Texas Rules of Criminal Evidence).

14. *Kelly,* 824 S.W.2d at 572.

15. *Granados,* 85 S.W.3d at 227; *see also United States v. Outlaw,* 134 F.Supp.2d 807, 810 (W.D.Tex.2001) ("A *Daubert* hearing is the wrong procedural vehicle through which to challenge the reliability of a canine alert" for purposes of determining whether a law enforcement official had probable cause to detain a passenger on a Greyhound bus.).

did not establish probable cause.[16] Probable cause exists when the facts and circumstances, based on reasonably trustworthy information, are sufficient to warrant a reasonable person to believe that a crime has been committed.[17] "[P]robable cause[ ] is dependent upon both the content of information possessed by police and its degree of reliability."[18] The information used to establish probable cause must be more reliable than that used to establish reasonable suspicion.[19] Here, the court of appeals concluded that the State's failure to establish the reliability of LIDAR technology under *Kelly* resulted in the State's failure to satisfy probable cause's "reasonably trustworthy information" requirement. So while we have already concluded that the court of appeals erred to require a *Kelly* hearing, we must ask whether it erred in holding that the trial judge's decision to deny Hall's suppression motion was wrong. We conclude that the court of appeals did not err. First, as noted by the court of appeals, there was no evidence that the LIDAR device was used to confirm Officer Phariss's independent, personal observation that Hall was speeding. Second, the record reveals that there was absolutely no evidence to show that use of LIDAR technology to measure speed supplies reasonably trustworthy information or that the trial judge took judicial notice of this fact, as well as his basis for doing so. As a result, the State failed to establish that Officer Phariss, who relied solely on LIDAR technology to conclude that Hall was speeding, had probable cause to stop Hall. Our holding today is limited to the facts of this case. It is likely that in some future case, it will become necessary for a court to decide what quantum or quality of information is necessary establish the reliability (i.e., reasonable trustworthiness) of LIDAR technology for measuring speed when a defendant challenges the reliability of that information to defeat probable cause at a pretrial suppression hearing.

## Conclusion

The court of appeals erred to hold that a Rule 702 *Kelly* gatekeeping hearing is required to show the reliability of LIDAR technology to measure speed at a hearing on a motion to suppress. Nevertheless, the court of appeals correctly held that the trial judge abused his discretion when denying Hall's suppression motion because there was no evidence that LIDAR technology, as used in this case, supplied probable cause for the stop. The court of appeals's judgment is therefore affirmed.

PRICE, J., filed a concurring opinion in which JOHNSON and HOLCOMB, JJ., joined.

KELLER, P.J., dissented.

PRICE, J., concurring in which JOHNSON and HOLCOMB, JJ., joined.

The court of appeals in this cause ultimately held that the trial court abused its discretion in failing to grant the appellant's motion to suppress.[1] Along the way, the

---

16. *Hall*, 264 S.W.3d at 350.

17. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)); *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

18. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

19. *Id.*

1. *Hall v. State*, 264 S.W.3d 346, 350 (Tex. App.-Waco 2008) ("The [trial] court abused its discretion by denying Hall's pretrial suppression motion because the State failed to prove the reliability of the LIDAR technology on which the officer relied to determine Hall was speeding. Accordingly, we sustain Hall's sole issue.").

court of appeals held that LIDAR technology is novel scientific evidence that is admissible only after a "full-blown" gate-keeping hearing under *Kelly v. State.*[2] Today this Court holds (as I understand it) that, because the Texas Rules of Evidence do not apply to a hearing on a pre-trial motion to suppress evidence, and because the requirement of a *Kelly* hearing is a product of Rule 702 of the Rules of Evidence, it cannot be said—at least strictly speaking—that the Rules of Evidence ever require a *Kelly* hearing, *per se*, at a hearing on a pre-trial motion to suppress; and that the court of appeals erred to conclude otherwise. I agree with this very limited holding. Whether *some* type of gate-keeping hearing must be held in the context of a pre-trial suppression hearing to determine the admissibility of scientific evidence, and what the characteristics of such a hearing ought to be are, of course, further questions that we need not resolve in this case today.

The purpose of a *Kelly* hearing is to provide an *in camera* forum for the proponent of novel scientific evidence to demonstrate that it is reliable enough to be admissible in a criminal trial. (Incidently, because the purpose of a *Kelly* hearing is to determine the admissibility of evidence,

the Rules of Evidence do not apply in the *Kelly* hearing itself, even if it is conducted mid-trial.[3]) But the appellant in this case never requested a hearing to determine the admissibility of evidence that is the product of LIDAR technology,[4] either at the pre-trial suppression hearing or during his trial. He never argued that the State should have to establish the reliability of LIDAR technology before evidence based upon that technology could be admitted at the motion to suppress hearing. In fact, without lodging an objection of any kind, the appellant allowed Officer Phariss to testify that he stopped the appellant because of the LIDAR reading. By failing to object, the appellant failed to put the State, as proponent of the novel scientific evidence, to whatever burden it may have (assuming it has *any* such burden in a pre-trial hearing context, where the Rules of Evidence do not apply—I offer no opinion on this question) to establish its reliability as a prerequisite to admissibility.[5] Therefore, this is not a case about the *admissibility* of novel scientific evidence at a pre-trial suppression hearing. Indeed, because a first-tier appellate court may not reverse a conviction without inquiring whether the purported error was properly preserved at trial,[6] the court of appeals could *not* have reversed (and, as I read its

2.  824 S.W.2d 568 (Tex.Crim.App.1992).

3.  *See* Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 2 Texas Practice: Guide to the Rules of Evidence § 702.7 (3d ed. 2002), at 75 & n. 22 ("Because reliability determinations are made under [Texas Rules of Evidence] 104(a), the court may consider inadmissible evidence."). Thus, the Rules of Evidence do not govern the admissibility of evidence at a hearing to establish the admissibility of evidence.

4.  In his motion to suppress, the appellant asked the trial court to suppress the fruits of the stop and subsequent search unless the State could prove that he was "stopped with probable cause/reasonable suspicion." While

he alleged (paradoxically) that the State should have to prove probable cause "by clear and convincing evidence," and cited *Kelly,* he nowhere argued that evidence with respect to LIDAR technology should be deemed inadmissible at the pre-trial hearing.

5.  *See* Goode, Wellborn & Sharlot, *supra,* at 73 ("The party opposing the admission of an expert's testimony must timely object or risk waiving the ability to challenge the expert's testimony on appeal. Once an objection is made, the proponent of the testimony bears the burden of demonstrating its reliability.").

6.  *E.g., Haley v. State,* 173 S.W.3d 510, 515 (Tex.Crim.App.2005).

opinion, *did* not reverse) the appellant's conviction on the basis of a claim about the *admissibility* of LIDAR technology at the pre-trial suppression hearing.

Instead of challenging the *admissibility* of Phariss's LIDAR-based testimony, the appellant was really challenging the *sufficiency* of that testimony—sufficiency to establish probable cause that he had been speeding, so as to justify his arrest.[7] He argued that, without evidence to establish the reliability of LIDAR technology or Phariss's proficiency in properly applying it in his case, the State did not adduce sufficient evidence to show that Phariss had probable cause to stop him for speeding. This is different from the issues 1) whether LIDAR-based testimony is admissible at a pre-trial suppression hearing, 2) whether *Kelly* should apply to determine admissibility in that context, or 3) whether, in the absence of the applicability of the Rules of Evidence, some functional equivalent to, or less-exacting version of, a *Kelly* hearing ought nevertheless to be required, as a matter of decisional law, to determine admissibility.

It is true that, in addressing the sufficiency issue, the court of appeals alluded to the *Kelly* criteria, and even "held" that, to be admissible, LIDAR technology must be established in a "full-blown" *Kelly* hearing.[8] But it did so, it seems to me, only in order to make the point that LIDAR constitutes a new and unproven (at least in the courts of Texas) technology, the reliability of which must be demonstrated by the party with the burden of proof before

its relevance (much less its probative value to establish probable cause) may be assumed. Ultimately the court of appeals simply agreed with the appellant that, absent testimony showing what LIDAR technology is, what it purports to prove, how reliably it proves it, and whether Phariss knew how to operate it properly and did so on the day in question, the State failed to supply probable cause to believe the appellant was speeding.

I agree with the court of appeals's conclusion that the evidence did not establish probable cause. Suppose Phariss had testified that he believed the appellant was speeding only because a blue cube on Phariss's dashboard had indicated so. Without knowing any more about the blue cube, a rational fact finder (here, the trial court as arbiter of pre-trial suppression issues) would have no way to conclude that Phariss's belief was a reasonable one. Neither common sense nor common experience informs the fact finder that a blue cube is capable of accurately gauging the speed of an automobile. Without knowing anything about the empirical track record of the blue cube, it cannot be assumed that Phariss's reliance upon it was reasonable. Perhaps there is some scientific principle involved, and the blue cube utilizes technology based upon that scientific principle that, when properly applied, has been shown empirically to measure car speed accurately. If that is so, but the courts of Texas have not yet generally recognized it, then the party with the burden to show probable cause must present at least *some*

---

7. It is true that, at one point in his brief on appeal, the appellant argued (somewhat inartfully) that "[t]he [trial] court erred in allowing scientific testimony concerning the speed detector Lidar equipment and the results of the Lidar speed on the appellant's automobile in violation of Rule 702 Texas Rules of Evidence, *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992[).]" But, as already noted, the appellant

did not preserve such an error for appeal. In any event, the major thrust of his argument was that the State failed to establish probable cause, not that it was erroneously allowed to introduce objected-to evidence with a novel scientific basis at the suppression hearing.

8. *Hall v. State, supra* at 350.

evidence (never mind the quantum, for now) to demonstrate it.[9] But testimony about nothing more than the blue cube itself, without more, would not demonstrate the reasonableness of Phariss's belief in relying upon it.

I do not see how LIDAR technology is (at the present time, at least) any different than my hypothetical blue cube. Common sense and experience tell us nothing about LIDAR, and I am aware of no court in Texas (and the State cites none) that has recognized the technology. It is up to the party with the burden of proof (here, the party who must establish the reasonableness of Phariss's belief that the appellant was speeding) to show that he had some reasonable basis for believing that LIDAR technology, properly applied, can give him reliable information about the speed of a car, and that he was, in fact, applying the technology properly when he measured the appellant's speed. In this case, the State presented evidence of what Phariss believed and why he believed it, but it presented no evidence whatsoever to show the reasonableness of Phariss's reliance on LIDAR technology to support his belief. He might as well have testified that he believed the appellant was speeding simply because a blue cube told him so.

We need not say anything in this case about *how* reliable the proponent of novel scientific evidence must show it to be at a pre-trial suppression hearing in order to establish either its admissibility at that hearing (since that is not an issue in this case) *or* its sufficiency to demonstrate probable cause. Here, the State, as proponent of the evidence, made absolutely *no* showing of reliability. Therefore, whatever standard we might ultimately articulate for how reliable the proponent must show the novel scientific evidence to be before it alone can establish probable cause, the State did not satisfy it in this case. For this reason, I would affirm the judgment of the court of appeals.

With these additional comments, I join the majority opinion.

---

9. *Cf. Hernandez v. State,* 116 S.W.3d 26, 29 & n. 4 (Tex.Crim.App.2003) (courts may take judicial notice of reliability of scientific evidence once it is recognized as reliable by "the pertinent professional community and has been accepted in a sufficient number of trial courts" after adversarial testing; "Trial courts are not required to re-invent the scientific wheel in every trial. However, some trial court must actually examine and assess the reliability of the particular scientific wheel before other courts may ride along behind.").