# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00322-CR
_____

### VERONICA ANNETH GONZALEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 5**
**Montgomery County, Texas**
**Trial Cause No. 13-286006**

### MEMORANDUM OPINION

After the trial court denied her oral motion to suppress[1], appellant Veronica

Anneth Gonzalez, with an agreed punishment recommendation from the State,

pleaded guilty to the offense of driving while intoxicated. In accordance with the

plea agreement, the trial court found Gonzalez guilty of driving while intoxicated,

sentenced Gonzalez to one year in jail, suspended the sentence, placed her on

---

[1] From the record before us, it appears that Gonzalez did not file a written motion to suppress the evidence.

1

community supervision for two years, and assessed a fine of $1,200. Gonzalez appeals the trial court's denial of her motion to suppress the stop. We affirm.

**Factual and Procedural Background**

Around 4 a.m. on February 10, 2013, Shenandoah Police Officer, Joseph Peart, was on patrol when he noticed a vehicle in his rearview mirror. The vehicle stood out to Peart because the vehicle's right turn signal was on, but the vehicle did not change lanes. At the time of the incident, the speed limit for this section of the road was forty-five miles per hour. Peart believed he was traveling approximately forty-five miles per hour, but he did not know his exact speed. Peart recalled that the vehicle was catching up to him.

Peart pulled into a parking lot and retrieved his light detection and ranging device ("LIDAR"). According to Peart, as the vehicle passed him, he noticed it was traveling at a "high rate of speed," so he decided to use the LIDAR, which confirmed the vehicle was traveling at a rate of sixty miles per hour. Peart then pulled out of the parking lot and began to pursue the vehicle.[2] While in pursuit, Peart noticed that the vehicle's right turn signal remained on while the vehicle

---

[2] Once Peart began his pursuit, he activated his dashboard camera (dash cam). The trial court admitted Peart's dash cam video into evidence. However, the video is not part of the appellate record.

2

passed through an intersection of the highway. Thereafter, Peart activated his lights and initiated a traffic stop.

According to Peart, the main reason he initiated the traffic stop was that the vehicle was speeding. Peart acknowledged that he did not include his observation of the unsafe lane change in his police report. He also acknowledged that he told Gonzalez that he pulled her over for speeding and did not mention to Gonzalez that he had observed her make an unsafe lane change.

Gonzalez denied speeding the night of the traffic stop. However, Gonzalez admitted that when Peart asked her if she knew how fast she was driving, she responded she was driving fifty miles per hour. Gonzalez explained that she did not think she was speeding because she thought the speed limit was fifty miles per hour and did not know that the speed limit was only forty-five miles per hour.

The trial court concluded that Peart made a valid traffic stop. The trial court made the following findings of fact: (1) the vehicle stopped without Peart turning his lights on; (2) Peart used the LIDAR to confirm his belief that Gonzalez was traveling above the speed limit; and (3) Gonzalez drove with her turn signal on and changed lanes a number of times.

3

## Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts *de novo*. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

## Motion to Suppress

In her sole issue on appeal, Gonzalez argues that the trial court erred in failing to suppress evidence obtained from an invalid traffic stop. She claims that Peart had no valid basis to stop her because there was insufficient evidence to believe that she had committed the traffic offense of speeding. She argues that Peart stopped her based solely on the information provided him from a LIDAR unit.[3]

---

[3] "A LIDAR unit operates by sending pulses of light toward a moving vehicle." Ryan V. Cox & Carl Fors, Admitting Light Detection and Ranging (LIDAR) Evidence in Texas: A Call for Statewide Judicial Notice, 42 St. Mary's L.J. 837, 849 (2011). The LIDAR unit measures the distance between the unit and the vehicle, which is calculated by measuring the time it takes for the laser pulse to

4

During the State's direct examination of Peart, Gonzalez asked to take Peart on "voir dire" outside the presence of the jury. After examining Peart about his LIDAR knowledge and how he specifically used the LIDAR unit that night, Gonzalez raised essentially an oral motion to suppress, stating that the State had not presented a "valid basis for the stop[.]" During the hearing, Gonzalez argued that the sole basis for the traffic stop was the LIDAR technology, which she maintained was inadmissible because it was not scientifically valid technology.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumptions of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant satisfies this initial burden by establishing that a search or seizure occurred without a warrant. *Id*. The burden then shifts to the State, which is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable under the totality of the circumstances. *See id*. at 672-73.

---

travel back to the unit. *Id*. Using known variables of distance and time, the unit calculates the speed of the vehicle. *Id*.

"[T]he Supreme Court has recognized that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Walter v. State,* 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). If an officer observes a traffic violation, probable cause for a traffic stop exists, and the officer is free to enforce the laws and detain the driver for the violation. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2015) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *Arizona v. Johnson*, 555 U.S. 323, 331 (2009); *Boughton v. State*, 643 S.W.2d 147, 148 (Tex. App.—Fort Worth 1982, no pet.) (citing *Praska v. State*, 557 S.W.2d 83 (Tex. Crim. App. 1977)).

Gonzalez relies on *Hall v. State*, 297 S.W.3d 294 (Tex. Crim. App. 2009) for the proposition that the LIDAR unit has not been proven to be scientifically reliable and, therefore, cannot form the sole basis of a valid stop. Gonzalez's reliance on *Hall* is misplaced. In reaching its decision in *Hall*, the Court of Criminal Appeals emphasized that the law enforcement officer "relied solely on LIDAR technology" in making his determination that the defendant was speeding. *Hall*, 297 S.W.3d at 298. The Court noted that there was no evidence that the LIDAR unit was used to confirm the officer's otherwise independent, personal

observation that the defendant was speeding. *Id*. Whereas here, Officer Peart testified that he personally observed Gonzalez driving at a high rate of speed in a forty-five mile per hour zone. He also testified that he was driving approximately forty-five miles per hour and that Gonzalez gained on him at that speed. "A speed in excess of the limits . . . is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful." Tex. Transp. Code Ann. § 545.352(a) (West Supp. 2014). Contrary to Gonzalez's argument, Peart did not decide to stop Gonzalez based solely on the LIDAR technology. Officer Peart's observation of Gonzalez's speeding was alone sufficient to justify the traffic stop. *See Icke v. State*, 36 S.W.3d 913, 915-16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see also Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (op. on reh'g); *McAfee v. State*, 204 S.W.3d 868, 870 (Tex. App.—Corpus Christi 2006, pet. ref'd); *Hesskew v. Tex. Dep't Pub. Safety*, 144 S.W.3d 189, 191 (Tex. App.—Tyler 2004, no pet.); *Tex. Dep't Pub. Safety v. Nielsen*, 102 S.W.3d 313, 317 (Tex. App.—Beaumont 2003, no pet.). Accordingly, we hold the trial court did not abuse its discretion in denying Gonzalez's oral motion to suppress evidence. We overrule Gonzalez's sole issue on appeal.

We affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 23, 2015
Opinion Delivered August 12, 2015
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.