# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00230-CR

---

**The State of Texas, Appellant**

**v.**

**Dustin Grier Hartley, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY
### NO. 2020CR0749, THE HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals from the trial court's order granting a motion to suppress filed by appellee Dustin Grier Hartley, who was arrested following a traffic stop for driving while intoxicated. The trial court concluded that the arresting officer lacked reasonable suspicion to initiate a traffic stop, and it granted the motion to suppress for that reason. On appeal, the State argues that the trial court erred in concluding that the officer lacked reasonable suspicion to initiate the stop. We agree and will reverse the trial court's order.

## BACKGROUND

At the motion to suppress hearing, the trial court heard evidence that on the evening of June 12, 2020, Officer Kaleb Meyer of the New Braunfels Police Department initiated a traffic stop on a vehicle driven by Hartley. However, Officer Meyer did not testify at the hearing. Instead, the State's sole witness was Officer Sylvia Martinez, who arrived at the

scene "less than a minute" after Meyer initiated the traffic stop. Martinez testified that she had been dispatched to find a vehicle, specifically a dark colored Mini Cooper, that had been "called in as a reckless driver." She added, "The call for service came out that the vehicle almost ran the complainant off the highway." Martinez testified that when she arrived at the scene, Meyer was "yelling at" Hartley because Hartley had "immediately exited from the vehicle" following the stop. Martinez observed Meyer place Hartley in handcuffs immediately after Hartley exited the vehicle.

While Meyer spoke with Hartley, Martinez approached the vehicle and spoke with the passenger, who was identified as Hartley's girlfriend. After that, Martinez spoke to Hartley, "basically letting him know what his girlfriend had advised me, that they were coming from Austin, and they did have alcohol, they did drink beer, and that she [the girlfriend] felt she was unsafe to drive and [Hartley] drove" instead. Martinez testified, "[Hartley] admitted to me that he had about six to eight beers of I believe it was a Backbone, Backbone beer."

Martinez further testified that Hartley had agreed to take field sobriety tests, which were conducted by Meyer, that she had reviewed Hartley's performance on those tests, and that Hartley had displayed several "clues" of intoxication during the tests. When asked if she believed that there had been probable cause to arrest Hartley for DWI, "based on everything [she had] seen and [her] involvement in the case," Martinez answered, "Yes." Martinez testified that Officer Meyer arrested Hartley.

On cross-examination, Martinez acknowledged that she was not the officer who had stopped Hartley's vehicle and that she had not observed Hartley speeding, failing to signal a turn, driving recklessly, or committing any other traffic offense. Martinez also acknowledged that the first contact she had with Hartley was after Meyer had stopped the vehicle.

The trial court also admitted into evidence recordings of the traffic stop and a 911 call reporting a reckless driver. However, the State did not play these recordings in their entirety at the hearing, which was conducted via Zoom, and the trial court considered only the parts of the recordings that the State played during the hearing.[1]

State's Exhibit 1 was an audio recording of the 911 call. On the part of the recording considered by the trial court, the following could be heard:

---

[1] The trial court granted the motion to suppress immediately at the conclusion of the hearing without taking the matter under advisement. To avoid making assumptions as to which portions of the recordings that the trial court considered, *see State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006), we abated this appeal and remanded the case to the trial court for additional fact findings related to the recordings, *see State v. Hartley*, No. 03-21-00230-CR, 2022 WL 696514, at *2 (Tex. App.—Austin Mar. 9, 2022) (per curiam order and mem. op.) (not designated for publication). In its additional findings, the trial court confirmed that in reaching its decision, it considered only the parts of the recordings that were played at the hearing:

This hearing was conducted via Zoom. As it relates to the exhibits, this Court based its decision regarding [its] Findings of Fact as follows:

State's Exhibit l (911 Call) from timestamp beginning at 0:00 and ending at 1:07.

State's Exhibit 2 (Officer Martinez's Body Cam) from timestamp beginning at 7:00 and ending at 10:01.

State's Exhibit 3 (Officer Meyer's Dash Cam) from timestamp beginning at 13:30 and ending at 15:39 and beginning at 18:59 and ending at 21:55.

State's Exhibit 4 (Officer Meyer's Body Cam) from timestamp beginning at 15:40 and ending at 17:59.

These were the only portions played and presented by the State for consideration by this Court. The State did not request this Court to view any exhibit in its entirety or to take the case under advisement prior to issuing its decision. This Court rendered its decision immediately at the conclusion of the hearing.

| [New Braunfels 911 operator]: | New Braunfels 911, what's your emergency? |
| --- | --- |
| [Hays County 911 operator]: | This is Hays County with a transfer on I-35 southbound, they're approaching the 195 [exit], he's reporting a reckless driver that almost ran him off the road. |

The New Braunfels 911 operator then spoke with the caller:

| [New Braunfels 911 operator]: | Yes sir, what's a description of the vehicle? |
| --- | --- |
| [Caller]: | It's a Mini Cooper, and I got the license plate here [caller recites license plate number]. |
| [New Braunfels 911 operator]: | Okay, and what color is the vehicle? |
| [Caller]: | It's like a greenish, dark greenish color. |
| [New Braunfels 911 operator]: | Okay, can you still see the vehicle at this time? |
| [Caller]: | I can see him, I'm kinda staying back, he's – he came across me the first time, I went across three lanes of traffic, and then I got, I didn't realize it was the same car, I got stuck behind him, he tried to cut me off, like to, you know, ram me. I'm actually an officer with the Austin Police Department. |

State's Exhibit 2 was an audio and video recording taken from Officer Martinez's body camera during the traffic stop. On the part of the recording viewed by the trial court, Officer Martinez could be heard speaking with Hartley and explaining to him that the reason for the stop was that "we got a call that you were coming in as a reckless driver." During the

4

conversation, she also referred to Officer Meyer, who at times could be seen standing near Hartley, as her "partner," and attempted to explain why Meyer was "elevated" at the beginning of the stop.

State's Exhibit 3 was an audio and video recording taken from Officer Meyer's patrol car dashcam during the stop. On the part of the recording viewed by the trial court, Officer Meyer can be seen conducting field sobriety tests on Hartley. State's Exhibit 4 was an audio and video recording taken from Officer Meyer's body camera during the stop. On the part of the recording viewed by the trial court, Hartley can be seen taking the walk-and-turn test. Officer Meyer's initiation of the traffic stop was not shown on any parts of the recording viewed by the trial court.[2]

At the conclusion of the hearing, the trial court granted the motion to suppress and later made findings of fact and conclusions of law, including the following:

---

[2] Officer Meyer's initiation of the traffic stop can be seen on portions of the recordings that were not viewed by the trial court. However, because the trial court did not consider those parts of the recordings at the suppression hearing, neither can we. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (providing that "appellate review of [a trial court's] ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision"); *Taylor v. State*, 509 S.W.3d 468, 482 n.7 (Tex. App.—Austin 2015, pet. ref'd) (limiting scope of review to evidence that was before trial court "at the time of its ruling"). Although a trial court has authority to "reopen the hearing" on a motion to suppress and consider additional evidence even after it has ruled on the motion, *see Black*, 362 S.W.3d at 635, there is no indication in this case that the trial court "reopened the hearing," *cf. id.* at 629 (hearing on motion to suppress was reopened during trial when State was allowed by trial court to elicit additional testimony on suppression issue).

## Findings of Fact

. . . .

Officer Kaleb Meyer was the stopping officer.

Officer Kaleb Meyer was the arresting officer.

. . . .

Officer Kaleb Meyer did not testify at this hearing.

. . . .

The first contact Officer Sylvia Martinez had with the Defendant was after Officer Meyer (who did not testify) had already stopped and arrested the Defendant.

. . . .

Officer Sylvia Martinez did not have personal knowledge of the totality of the circumstances regarding the facts of the stop and arrest of the Defendant because she was not the stopping or arresting officer.

Officer Sylvia Martinez did not observe the Defendant commit any traffic violations.

Officer Sylvia Martinez did not observe the Defendant failing to use a turn signal.

Officer Sylvia Martinez did not observe the Defendant speeding.

Officer Sylvia Martinez did not observe the Defendant driving recklessly.

Officer Sylvia Martinez did not observe the Defendant commit any traffic violations or any other criminal violations in the penal code.

. . . .

The State failed to provide any testimony by the stopping officer regarding the actual stop itself of the Defendant's vehicle.

**Additional Findings of Fact[3]**

Although there is information in the 911 call to support an officer's reasonable belief that a traffic offense had been committed, there is no evidence in the record that the information was ever conveyed to Officer Kaleb Meyer.

There was no evidence presented by the State that demonstrated that Officer Meyer stopped Mr. Hartley based on the 911 call information. Because Officer Meyer did not testify it is only a presumption that [] Officer Meyer was stopping Mr. Hartley's vehicle based on the 911 call information.

There was no testimony or evidence presented that Officer Meyer was even aware of the 911 call.

Thus, even if the information contained in the 911 call did support an officer's reasonable belief that Hartley had committed a traffic offense there was no evidence by the State presented as to why Officer Meyer stop[ped] Mr. Hartley's vehicle.

A 911 call was placed on June 12, 2020, reporting a reckless driver "almost" running the caller off the road.

The caller identified the vehicle [as a] Mini Cooper with a license plate number of [] and was dark green in color.

[T]he 911 caller reported that the vehicle had cut one other person off.

---

[3] The trial court made these additional fact findings after this Court abated this appeal to obtain the trial court's essential findings related to the 911 call. *See State v. Hartley*, No. 03-21-00230-CR, 2021 WL 2483790, at *1 (Tex. App.—Austin June 18, 2021) (per curiam order and mem. op.) (not designated for publication).

The 911 caller was identified as Shane Stephenson, an off-duty Austin Police Department officer. The caller did not leave a call back number and did not remain at the scene.

The 911 call information was relayed to Officer Martinez.

It is unknown whether Officer Meyer, who was the stopping and arresting officer, ever received the information from dispatch regarding the 911 call since the State did not call him as witness, nor did he testify.

Although Officer Martinez arrived shortly after Officer Meyer had already made the stop, she was, by her own testimony, not the stopping or arresting officer. The stop of Mr. Hartley's vehicle had already been made by Officer Meyer upon her arrival.

Officer Martinez arrived within one minute after Former Officer Meyer's stop of Mr. Hartley.

**Conclusions of Law**

Because the State failed to present Officer Meyer as a witness in this case or present any other evidence regarding Mr. Hartley's initial detention by Officer Meyer or his knowledge of the 911 call, this Court concludes [that] Mr. Hartley's initial detention by Officer Meyer was unlawful and not justified due to the lack of reasonable suspicion of criminal activity due to the lack of specific articulable facts. The detention had already occurred by the time Officer Martinez arrived.

Because it is unknown whether Officer Meyer ever received the information for the 911 from dispatch this Court concludes Officer Meyer did not have reasonable suspicion to believe the Defendant was violating the law.

Because Officer Meyer was the initial stopping officer, and because the State failed to present his testimony, nor was there any evidence presented regarding whether he received the 911 call information, the Court concludes that Officer Meyer did not have specific, articulable facts based on the totality of the circumstances that could have led him to reasonably conclude that Mr. Hartley was, has been or soon would be engaging in criminal activity.

Due to the failure of the State to present testimony or evidence from Officer

8

Meyer, the stopping and arresting officer, regarding the actual stop itself, the Court concludes there was a lack of reasonable suspicion or probable cause for the stop.

Officer Martinez, although arriving on the scene shortly thereafter, was not the stopping officer or arresting officer. The Court concludes her testimony was insufficient to support the basis for Officer Meyer's stop of the defendant's vehicle.

Although the 911 call would support an officer's reasonable belief that a traffic offense had been committed, the State chose not to call Officer Meyer, the initial stopping officer, as a witness in this case, as such, it can only be presumed that Officer Meyer used the information from the 911 call as the basis for stopping Mr. Hartley's vehicle. Thus, this Court concludes there was a lack of reasonable suspicion or probable cause for the stop.

This appeal by the State followed.


## STANDARD OF REVIEW

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard." *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021) (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013)). "We afford almost complete deference to the trial court's determination of historical facts, especially when based on 'an assessment of credibility and demeanor,' but conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations." *Furr v. State*, 499 S.W.3d 872, 886 (Tex. Crim. App. 2016); *see also State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013). "As the prevailing party at the trial level, appellee gains the benefit of deference on factual findings made in [his] favor." *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017) (citing *State v. Krizan-Wilson*, 354 S.W.3d 808, 815-16 (Tex. Crim. App. 2011)). "However, whether the facts, as determined by the trial court, add up to reasonable suspicion or

probable cause to support a search or seizure under the Fourth Amendment is a legal question to be reviewed de novo." *State v. Colby*, 604 S.W.3d 232, 236 (Tex. App.—Austin 2020, no pet.); *see Ford*, 537 S.W.3d at 23; *Duran*, 396 S.W.3d at 571; *Kerwick*, 393 S.W.3d at 273.

**DISCUSSION**

In its first issue, the State argues that the trial court erred in granting the motion to suppress "because the facts collectively known to law enforcement provided objectively reasonable suspicion for the stop." More specifically, the State contends that the information provided to the 911 operator and communicated to Officer Martinez provided an objectively reasonable basis for the stop, and that information could be imputed to Officer Meyer under the "collective knowledge" doctrine.

"To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have 'reasonable suspicion.'" *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Consequently, reasonable suspicion can be established even if the detaining officer does not testify at the suppression hearing. *See Castro v. State*, 227 S.W.3d 737, 743 (Tex. Crim. App. 2007); *see also Duran*, 396 S.W.3d at 570–71; *Ford v. State*, 305 S.W.3d 530, 539 (Tex. Crim. App. 2009). "Hearsay information is sufficient to support a fact or an

10

opinion at a suppression hearing."[4] *Castro*, 227 S.W.3d 743. "While the officer who observed the traffic violation may be able to give more specific details regarding the reason for the stop . . . the court does not need to know the subjective details of the stop from the officer's standpoint in order to find that the stop was reasonable." *Id.*

"Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Derichsweiler*, 348 S.W.3d at 914 (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). Stated another way, "under this 'collective knowledge' doctrine, when several officers are cooperating, their cumulative information may be considered in assessing reasonable suspicion or probable cause." *State v. Martinez*, 569 S.W.3d 621, 626 (Tex. Crim. App. 2019) (citing *Duran*, 396 S.W.3d at 569 n.12); *see also Illinois v. Andreas*, 463 U.S. 765, 771–72 n.5 (1983) ("[W]here law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all."); *O'Bryan v. State*, 464 S.W.3d 875, 879 (Tex. App.—Fort Worth 2015, pet. ref'd) (discussing history and scope of collective knowledge doctrine).

"A 911 police dispatcher is ordinarily regarded as a 'cooperating officer' for purposes of" determining whether the collective-knowledge doctrine applies. *Derichsweiler*, 348 S.W.3d at 914. Accordingly, we begin our analysis with the 911 call. The call was made to

---

[4] "Texas Rule of Evidence 101, which defines the title and scope of the rules, specifically provides that the Rules of Evidence, with the exception of those that concern privileges, do not apply to suppression hearings." *Hall v. State*, 297 S.W.3d 294, 297 (Tex. Crim. App. 2009). Thus, evidence that is admissible at a suppression hearing may not be admissible at trial, where the State has the burden to prove its case with evidence that is admissible under the Rules of Evidence.

Hays County 911 and transferred to New Braunfels 911 as a report of "a reckless driver that almost ran [the caller] off the road" on "I-35 southbound . . . approaching the 195 [exit]." The caller, who identified himself as an Austin Police Department officer, then proceeded to identify the vehicle as a Mini Cooper that was "dark greenish" in color. The caller also provided 911 with the license-plate number of the vehicle. When asked if he could still see the vehicle during the call, the caller told the operator, "I can see him, I'm kinda staying back, he's – he came across me the first time, I went across three lanes of traffic, and then I got, I didn't realize it was the same car, I got stuck behind him, he tried to cut me off, like to, you know, ram me."

The trial court found that this information would "support an officer's reasonable belief that a traffic offense had been committed," and we agree. The caller told 911 that the driver of the vehicle had "tried to cut [him] off" and "ram" him as the caller crossed three lanes of traffic. This information would support an officer's reasonable belief that the driver of the vehicle had committed the offense of reckless driving. *See* Tex. Transp. Code § 545.401(a) ("A person commits an offense if the person drives a vehicle in willful or wanton disregard for the safety of persons or property."); *see also Navarette v. California*, 572 U.S. 393, 403 (2014) (concluding that similar information provided to 911 dispatcher provided officer with reasonable suspicion to initiate traffic stop of vehicle). Moreover, because the caller identified himself on the call and provided specific information regarding the vehicle and its location on the highway at the time of the call, the information can be regarded as reliable. *See Derichsweiler*, 348 S.W.3d at 915.

The trial court further found that "[t]he 911 call information was relayed to Officer Martinez," and this finding is also supported by the record. Martinez testified that she had been dispatched to find a vehicle, specifically a dark colored Mini Cooper, that had been "called in as

12

a reckless driver" and that "[t]he call for service came out that the vehicle almost ran the complainant off the highway." This testimony is consistent with the information provided to the 911 operator. Thus, it can be inferred that the information provided to the 911 operator was relayed to Martinez. Accordingly, it does not matter that Officer Martinez did not observe Hartley commit a traffic offense because the information known to the 911 dispatcher, which the trial court found would support an officer's reasonable belief that a traffic offense was committed, was imputed to Martinez under the collective-knowledge doctrine. *See id.*

The remaining question is whether that same information also can be imputed to Officer Meyer, even though he did not testify at the suppression hearing and there is no other evidence before us as to what Meyer observed prior to initiating the traffic stop. The trial court decided that the information provided to 911 and relayed to Officer Martinez could not be imputed to Meyer, concluding as follows:

> Because it is unknown whether Officer Meyer ever received the information for the 911 from dispatch this Court concludes Officer Meyer did not have reasonable suspicion to believe the Defendant was violating the law.
>
> . . . .
>
> Officer Martinez, although arriving on the scene shortly thereafter, was not the stopping officer or arresting officer. The Court concludes her testimony was insufficient to support the basis for Officer Meyer's stop of the defendant's vehicle.
>
> . . . .
>
> Although the 911 call would support an officer's reasonable belief that a traffic offense had been committed, the State chose not to call Officer Meyer, the initial stopping officer, as a witness in this case, as such, it can only be presumed that

13

> Officer Meyer used the information from the 911 call as the basis for stopping Mr. Hartley's vehicle. Thus, this Court concludes there was a lack of reasonable suspicion or probable cause for the stop.

The trial court's conclusions are contrary to the holding of the Court of Criminal Appeals in *Martinez*, *supra*. In that case, the defendant was arrested without a warrant for the offense of public intoxication and filed a motion to suppress, challenging the legality of his warrantless arrest. *Martinez*, 569 S.W.3d at 623–24. At the suppression hearing, two of the three officers who responded to the call of a bar fight involving Martinez testified to their observations of Martinez's intoxication; however, the third officer who arrested Martinez did not testify at the hearing. *See id*. at 624; *see also State v. Martinez*, No. 13-15-00069-CR, 2015 WL 5797604, at *1 (Tex. App.—Corpus Christi-Edinburg Oct. 1, 2015) (mem. op., not designated for publication), *vacated*, No. PD-1337-15, 2016 WL 7234085 (Tex. Crim. App. Dec. 14, 2016) (plurality op.) (not designated for publication) (describing background facts of case in greater detail). The trial court concluded that the arresting officer did not have knowledge of sufficient facts to constitute probable cause and granted the motion to suppress.

Following a complicated procedural history that we need not detail here, the Court of Criminal Appeals ultimately concluded that the arresting officer's knowledge was not determinative of probable cause: "Whatever his knowledge of the facts may have been, that information, in combination with the knowledge of [the other officers], showed probable cause to arrest [Martinez] for public intoxication." *Martinez*, 569 S.W.3d at 626. The court agreed with the State that the "collective knowledge" doctrine applied. It explained:

> In this case, all of the officers were responding to the same call, all were present at the scene, all had some degree of communication with [Martinez], and all were present at the time of the arrest. Therefore, it is apparent that [the arresting

14

officer] was cooperating with [the testifying officers], and all of the officers present were working as a team responding to the call.

*Id*. at 627. The court added, "We hold that evidence of communication between officers is not always a necessary requirement to apply the collective knowledge doctrine. Under the facts of this case, the sum of the information known to the cooperating officers—their cumulative information—should be considered in assessing probable cause." *Id*. The court concluded, "[B]ecause all three officers were cooperating, even if there is no direct evidence regarding [the arresting officer's] knowledge, his knowledge (whatever it was), in addition to the knowledge of Officers Guerrero and Ramirez (which clearly amounted to probable cause), totaled up to probable cause to arrest Appellee for public intoxication." *Id*. at 630.

This case presents a similar situation. Officer Meyer, the detaining and arresting officer, did not testify at the suppression hearing. However, Officer Martinez did. Martinez testified that she arrived at the scene "less than a minute" after Meyer initiated the traffic stop, and as Meyer spoke with Hartley, Martinez spoke with Hartley's girlfriend, obtaining information about where they were coming from and how much they had to drink. Then, after speaking with Hartley's girlfriend, Martinez spoke with Hartley, "letting him know what his girlfriend had advised me, that they were coming from Austin, and they did have alcohol, they did drink beer, and that she [the girlfriend] felt she was unsafe to drive and [Hartley] drove" instead. Martinez also obtained an admission from Hartley "that he had about six to eight beers" before driving. Further, on the video recording taken from Martinez's body camera, she explained to Hartley that the reason for the stop was that "*we* got a call that you were coming in as a reckless driver," and she referred to Officer Meyer as her "partner." It is clear from the evidence presented that Martinez and Meyer were "working as a team" to detain and investigate

15

Hartley in response to the 911 call. Thus, we conclude that even if the State failed to prove that Officer Meyer personally had reasonable suspicion to detain Hartley, because Meyer and Martinez were cooperating during the traffic stop, the sum total of their knowledge, including the information relayed to Martinez from the 911 call, amounted to reasonable suspicion to detain Hartley for committing a traffic offense. Accordingly, following *Martinez*, the motion to suppress should have been denied. *See id.*

We sustain the State's first issue.[5]

## CONCLUSION

We reverse the trial court's order granting the motion to suppress and remand for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed: June 23, 2022

Do Not Publish

---

[5] Because of our disposition of the State's first issue, we need not consider the State's second and third issues, which address alternative arguments related to the trial court's findings of fact and conclusions of law.